Desmond, J.
In 1953 Frank T. Hammond died intestate in a mental hospital operated by the State of New York. He had been declared incompetent several years earlier and had spent his last few years in State hospitals for the insane. No widow or other distributee has been found. Hammond’s net estate of $573.96 consisted only of war veterans’ pension payments received from the United States. By a Surrogate’s decree on the final accounting of Hammond’s administrator, the balance in the estate was, on demand of the State of New York, ordered to be paid “ to the Comptroller of the State of New York in accordance with Section 272 of the Surrogate’s Court Act ”. The Surrogate rejected the demand of the United States of America that the net estate be paid to it pursuant to subdivision (3) of section 450 of title 38 of the United States Code. However, on appeal by the United States, the Appellate Division, Second Department, reversed the Surrogate’s decree on the law and remitted the matter to the Surrogate to make a new decree turning over the fund to the United States. The State appeals here.
The United States says that these are pension funds “ which under the laws of the State wherein the beneficiary had his last legal residence would escheat to the State ” and that as such they, under the plain language of subdivision (3) of section 450 of title 38 of the United States Code, “ escheat to the United States ” and must be paid over to the United States Veterans’ Administration. The State, on the other hand, says that section 272 of the Surrogate’s Court Act directing payment of estate funds to the State Comptroller where there are no known distributees is not an escheat statute. The State’s assertion is that section 272 of the Surrogate’s Court Act, with sections 600 (subd. 1, par [b]), 1404 and 1406 of the Abandoned Property Law and other statutes, makes up a legislatively mandated system not of absolute forfeiture but of custodial care only (see Moufang v. State of New York, 295 N. Y. 121, 127) with an obligation on the State without time limit to return the funds at any time upon establishment pursuant to section 272 (supra) of a claim thereto.
Subdivision (3) of section 450 of title 38 of the United States Code is a plain statement that whenever Federal war pension funds in a decedent’s estate would otherwise escheat to a State, they are to escheat to the Federal Government to be used by the Veterans’ Administration. A similar purpose of preventing *571 profit to a State out of funds originally provided by the United States Veterans’ Administration is expressed in other related Federal laws (see U. S. Code, tit. 38, §§ 17, 451, 512, 514, 686c). There can be no doubt of the power of Congress to attach such a condition to the grant of a war pension (United States v. Hall, 98 U. S. 343, 346, 347; see Matter of Price, 199 Misc. 833). The only dispute is as to whether there is here present the condition prescribed by the Federal law for reverter — that is, would this money under our State law “ escheat ” to New York State if not recaptured by the Federal Government?
Our inquiry, both sides agree, is as to the intent of Congress. Does the language in subdivision (3) of section 450 of title 38 of the United States Code “ escheat to the State ” include such transfers of unclaimed estate funds as are required by New York law to be made to the State Comptroller? We think it does. “ Escheat ” ordinarily means a falling of property into the ownership of the State because of a default of heirs (Matter of Clark, 271 App. Div. 691, 696; Matter of People [Melrose Ave.], 234 N. Y. 48, 53). The State, citing section 1404 of the Abandoned Property Law, insists that the State of New York under its statutory scheme never gets title but holds the abandoned property forever, awaiting claimants. But the word “ escheat ” and the idea behind it need not be restricted to absolute and immediate transfers of title at the moment of death. The New York statutes, recognizing the certainty that the greater part of the abandoned property of various kinds coming into the State’s possession will never be claimed, contemplate that the surplus will eventually be applied by the State to its own uses (see State Finance Law, § 93, subd. 3; § 95). That, it seems to us, is sufficiently an “ escheat ” to come within the intent and obvious purpose of the Federal law.
The Federal statute (U. S. Code, tit. 38, § 450, subd. [3]) says that if the fund would otherwise “ escheat ” to the State it must instead “ escheat ” to the United States. The word “ escheat ” should be given the same meaning in its two uses in that statute. It appears (in the form of a 1946 official opinion by the Solicitor of the Federal Veterans’ Administration) that the Federal Government itself construes the statutory (U. S. Code, tit. 38, § 450, subd. [3], supra) “ escheat ” to the Federal Government of these pension funds to mean and include that on application of a lawful claimant at any future time the money will be turned over. Thus, the Federal “ escheat ” *572 statute, as authoritatively interpreted (United States v. Jackson, 280 U. S. 183, 193) means just what the State “ escheat ” statutes mean — that the unclaimed property will forever be available to any heirs who come forward. The Federal statutory policy so declared and construed is controlling and requires enforcement of the condition on which this pension was paid.
The order should be affirmed, without costs.
Chief Judge Conway and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Order affirmed.