Jones, J.
The question is whether, on the death of an incompetent veteran domiciled in New York who dies intestate and without heirs, the State of New York is entitled to an estate tax where all the assets of the decedent’s estate were derived from benefits paid by the Veterans’ Administration. The answer turns on the proper interpretation to be placed on subdivision (e) of section 3202 of title 38 of the United States Code which provides: "(e) Any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from benefits payable under laws administered by the Veterans’ Administration, which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Veterans’ Administration, and shall be deposited to the credit of the applicable revolving fund, trust fund, or appropriation.”
Initially we note that we do not doubt that the Federal Government has authority to provide that all funds of a decedent’s estate which were derived from benefits paid under laws administered by the Veterans’ Administration shall revert to the United States, without diminution by State estate taxes, where the decedent dies intestate leaving no distribu *84 tees. The pertinent and much narrower question here is whether such a result is commanded by the present provisions of subdivision (e) of section 3202. We agree with the courts below that it is not.
The decedent here, an incompetent veteran, was admitted to Matteawan State Hospital for the Insane in 1929. He remained there until 1966 when he was transferred to Pilgrim State Hospital where he died on January 16, 1967, intestate and without known heirs. The Public Administrator was appointed. Assets of the estate were collected, debts and administration expenses were paid, and on December 17, 1968 a payment was made by the administrator to the New York State Tax Commission in the amount of $867.47 on account of New York State estate taxes, with statutory interest thereon in the additional amount of $171.90 paid on February 6, 1969. In March, 1970 the administrator petitioned for judicial settlement of his accounts, and a citation was served on the Veterans’ Administration. The United States of America then presented its claim for the entire net assets of the decedent’s estate after deduction of debts and administration expenses other than the amount of $1,039.37 paid on account of New York State estate taxes. On order of the Surrogate a supplemental citation was served on the State Tax Commission. Thereafter based on his written decision, the Surrogate entered an order judicially settling the administrator’s account in which payment of estate tax and interest to the State of New York was approved and the administrator was directed to pay the balance of estate assets to the Veterans’ Administration. On appeal by the United States the Appellate Division affirmed and then granted leave to appeal to our court.
We conclude that the proper interpretation of the present statute is that "funds in the hands of a guardian * * * derived from benefits payable under laws administered by the Veterans’ Administration, which under the law of the State [of New York] would escheat to the State, shall escheat to the United States”. The reference to State law of "escheat” defines not only the occasion on which the Veterans’ Administration becomes entitled but as well the amount to which it is entitled.
Preliminarily we observe that in origin the word "escheat” was a term of art applicable only to real property — descriptive of the forfeiture to the lord of the manor in certain contingencies of lands held in feudal tenure. Passing through intermedi *85 ate stages the term has lost its initial narrow denotation and may now be understood as referring broadly to the reversion of property, real and personal, to the State on the death of the owner without distributees or claimants (see Matter of Menschefrend, 283 App Div 463, 465; 1 NY Jur, Abandoned and Escheated Property, §§ 8-10). It is evident that by the use of "escheat” in subdivision (e) of section 3202 it was intended to refer to reversion in this more general sense (Matter of Hammond, 3 NY2d 567, 571, so construing the same verb in US Code, tit 38, § 450, the predecessor of present § 3202, subd [e]). The law of escheat in our State is now to be found in the Abandoned Property Law (1 NY Jur, Abandoned and Es-cheated Property, § 10). It is of no present consequence, we think, that in the fundamental changes in our law of escheat made in the general revision of the Abandoned Property Law in 1943 the policy of the State with respect to escheated property was changed from one of confiscation to one of custodial protection (idem.). We agree that the transfer of property now accomplished under the provisions of our Abandoned Property Law comes "within the intent and obvious purpose of the Federal law” (Matter of Hammond, supra, p 571).
It is clear that the present provisions of the Abandoned Property Law and associated statutes operate as to the property of a deceased person only after the prior deduction of both Federal and State estate taxes. Thus, under SCPA 2222 (subd 1) and section 600 (subd 1, par [b]) and subdivision 2 of section 602 of the Abandoned Property Law, it is the "distributive share” which is payable to the State Comptroller, and a distributive share is described by statute as the amount available for distribution after the payment of State estate taxes (EPTL 4-1.1). The New York tax on property passing at death is an "estate tax”, taxable "on the transfer of the New York taxable estate”, not an "inheritance tax” imposed on or computed with reference to the receipt of property by estate beneficiaries. Nor in the computation of the New York taxable estate is any deduction allowed for "escheat” (as distinguished from "bequests, legacies, devises or transfers”) either to the State or to the United States (Tax Law, §§953, 955; cf. Internal Revenue Code, § 2055, subd [a], par [1], US Code, tit 26, § 2055, subd [a], par [1]; Senft v United States, 319 F2d 642). Thus under subdivision (e) of section 3202 the Veterans’ Administration is entitled only to such funds as would pass *86 into custodial possession of the State of New York pursuant to the provisions of the Abandoned Property Law, i.e., funds after deduction of estate taxes (cf. Matter of Hammond, 3 NY2d 567, supra).
That apparently contrary conclusions may have been reached under the applicable statutes in other States is not controlling. The issue is not one of the scope of the authority of the Federal Government, rather it is as to the extent such authority has been exercised in the adoption of the present provisions of subdivision (e) of section 3202, interpreted as they must be in the light of the "escheat” provisions of New York State law.
Nor, we note, does the prohibition imposed by the Congress in subdivision (a) of section 3101 of title 38 of the US Code against taxation of veterans’ benefits extend to estate taxes (cf. United States Trust Co. v Helvering, 307 US 57; Matter of Sabin, 224 App Div 702; Matter of Schaeffer, 130 Misc 436; Matter of Dean, 131 Misc 125). Indeed counsel for the Federal Government concede that a State estate tax could have been imposed and collected if this veteran had left heirs.
The issue is simply that under present subdivision (e) of section 3202 there shall pass to the Veterans’ Administration that portion of this deceased veteran’s estate which would have gone to the State of New York under our own Abandoned Property Law. The determinations of the courts below effect such transfer.
Accordingly, the order of the Appellate Division should be. affirmed.