## In the Matter of the Application to Determine the Estate Tax under Article 26 of the Tax Law upon the ESTATE of William NOVOTNY, Deceased.

### No. 74 Civ. 2962 (CHT).

United States District Court,
S. D. New York.

Feb. 28, 1978.

---

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for Veterans' Administration; Samuel J. Wilson, Asst. U. S. Atty., New York City, of counsel.

Irving Atkins, Senior Atty., New York State Tax Commission, Albany, N.Y., for New York State Tax Commission.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for New York State Department of Taxation and Finance; Irwin M. Strum, Allan E. Kirstein, Asst. Attys. Gen., New York City, of counsel.

## OPINION

TENNEY, District Judge.

This proceeding concerns a dispute arising between the Veterans Administration of the United States (sometimes hereinafter referred to as the "Government") and the New York State Tax Commission (sometimes hereinafter referred to as the "State") over the application of New York State's estate tax to funds escheating from the hands of a Committee of a deceased incompetent veteran, William Novotny, to the Veterans Administration pursuant to 38 U.S.C. § 3202(e).

By its motion for summary judgment, the Government asks the Court to declare that such funds are not subject to estate taxation by the State. In response, the State seeks to have this Court decline jurisdiction pursuant to 28 U.S.C. § 1341, arguing that there is a plain, speedy and efficient remedy available to the Government in the Surrogate's Court of New York State. In the alternative, the State moves for an order imposing the estate tax on such funds pursuant to Section 952 of the New York State Tax Law. For the reasons hereinafter set forth the Government's motion for summary judgment is granted, and the State's motions are in all respects denied.

William Novotny, a resident of New York, served in the armed forces of the United States during World War I and was found incompetent by order of the New York State Supreme Court dated October 28, 1918. By order dated December 27, 1920, the veteran's father, William Novotny, Sr., was appointed as Committee of the estate of his incompetent son after the veteran's wife, Anna Novotny, had declined to serve as his Committee under a prior order of appointment dated October 28, 1919. At the time of the appointment of the Committee, it was stated that the veteran had no assets other than a claim for "War Risk Compensation."

The accountings filed by the Committee and various successor Committees of the veteran indicate that his estate consisted of benefits he received from the Veterans Bureau and its successor agency, the United States Veterans Administration, and income which had accrued on the investment of these benefits. The accountings note only two exceptions, the first a bonus received from New York State of $48.67, reflected in the Committee's accounting dated January 20, 1926, and the second, Social Security Benefits which were paid to the Committee beginning in 1967 at a rate of

between approximately $35.20 and $40.20 per month.

Novotny died after an 18-day illness at the age of 82 years on February 25, 1972 in the Boston City Hospital, Boston, Massachusetts, having been transferred out of the Veterans Administration Hospital in Boston some six or eight months prior thereto and after having resided in said facility since around the date of his incompetency determination in 1918. This transfer had been made as part of the Veterans Administration program to remove patients with no medical expectation of improvement out of Veterans Administration hospital facilities and into nursing homes. Proceedings were thereafter conducted in Supreme Court, New York County, New York to wind up the affairs and settle the final accounting of his Committee.

During the course of that accounting proceeding, the Veterans Administration claimed the estate as an escheat pursuant to 38 U.S.C. § 3202(e), and the state court directed that it be so distributed, but the bank which held certain funds of the estate on deposit indicated that it would refuse to release these funds unless it received a waiver of liability for estate taxes under Section 249–cc of the New York State Tax Law from the New York State Tax Commission. The New York State Tax Commission refused to issue a waiver of liability which the bank required, asserting that New York State estate taxes were required to be paid on funds escheating to the Veterans Administration under 38 U.S.C. § 3202(e). For its part, the Veterans Administration refused to pay or to permit to be paid state estate taxes on the escheating estate, asserting that such taxes were inapplicable to funds escheating pursuant to section 3202(e).

In order to permit the Court to finally settle the affairs of the Committee, the United States, the New York State Tax Commission and the Seamen's Bank for Savings entered into a stipulation whereby the Seamen's Bank would hold $3,000.00 of the estate funds to abide the outcome of a proceeding to be commenced by the State Tax Commission to determine the amount of New York State estate tax due, if any. The remainder of the estate was to be delivered to the Veterans Administration. By order dated March 29, 1974, the Supreme Court, New York County, entered a "Consent Order Amending Resettled Order," which conformed to the stipulation described above and finally settled the account of the Committee.

Thereafter, by petition dated June 28, 1974, the New York State Tax Commission commenced a proceeding in Surrogate's Court, New York County, to determine the estate tax, if any, to be imposed upon the estate of William Novotny pursuant to Article 26 of the New York State Tax Law. The petition asserted a tax liability in the amount of $523.80. A copy of this petition was served upon the United States Attorney for the Southern District of New York on July 2, 1974.

By petition filed in the United States District Court for the Southern District of New York on July 11, 1974, the United States removed the proceeding to this Court pursuant to 28 U.S.C. §§ 1441, 1444 and 1446(b) for the stated purpose of "deciding a question of federal law, namely, whether the State of New York is entitled to tax property escheating to the United States pursuant to 38 U.S.C. § 3202(e) and formerly possessed by William Novotny." Petition for Removal ¶ 6.

### Jurisdiction and Abstention

The State asks that this Court decline to exercise jurisdiction in favor of the state courts which are said to be more competent to determine this controversy. The Court is not persuaded by this argument.

■ First, it is clear that the federal district court can exercise jurisdiction over a case in which the application of a state tax statute is contested where the United States is a party. Indeed, the State does not deny such jurisdiction. *In re Levy,* 74 Civ. 2229 (S.D.N.Y. July 20, 1977) (Canella, J.); see *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17

L.Ed.2d 414 (1966); *United States v. Woodworth,* 170 F.2d 1019, 1020 (2d Cir. 1948); 28 U.S.C. § 1341.

■ Second, as will be shown hereinafter, the central question at issue here involves not an interpretation of state law but of federal law, a task to which the federal court is well suited. Finally, any possible ambiguities in the state statute were resolved by the highest court in New York which interpreted that statute in such a way as to make a constitutional dispute unavoidable. *In re Estate of O'Brine,* 37 N.Y.2d 81, 371 N.Y.S.2d 453, 332 N.E.2d 326 (1975). In these circumstances, this Court is under a duty to exercise its jurisdiction. *See McRedmond v. Wilson,* 533 F.2d 757, 760–62 (2d Cir. 1976).

*Taxation by a State of an Escheat to the United States under 38 U.S.C. § 3202(e)*

The Government argues: (a) that the clear and unmistakable intent of Congress was that states should not benefit from gifts by the United States to veterans of its military services; (b) that the veteran's pension benefits did not constitute a part of his gross estate subject to estate taxes because they reverted to the United States upon the veteran's death; (c) that state taxation of such reversionary interest is unconstitutional; and (d) that if the veteran possessed a general power of appointment over the reversionary interest which would require its inclusion in his gross estate, his failure to exercise such power renders this reversionary interest deductible from his gross estate.

If, in the exercise of its legitimate legislative power, Congress has enacted a statute that veterans' benefits such as those involved in this case should revert *untaxed* to the Veterans Administration, then by reason of the supremacy clause that statute would override any state law to the contrary. U.S.Const. art. VI.

■ Pursuant to the power granted by Article I, Section 8 of the United States Constitution Congress has the power to pay pensions to veterans. *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *Abbott v. Morgenthau,* 68 U.S.App.D.C. 83, 93 F.2d 242, 243, *cert. denied,* 303 U.S. 638, 58 S.Ct. 526, 82 L.Ed. 1098 (1937). Veterans' pensions are the bounties of government which Congress has the right to give, withhold, recall or condition at its discretion. *Lynch v. United States,* 292 U.S. 571, 576–77, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *United States v. Teller,* 107 U.S. 64, 68, 2 S.Ct. 39, 27 L.Ed. 352 (1883). The recipient holds such grants upon whatever conditions the Congress has annexed to the gift, and the meaning of those conditions must be interpreted in the light of the intent of Congress in attaching them to its gift to the veteran. *Abbott v. Morgenthau, supra.*

■ It is the position of the Government that the statute in question clearly intended that no part of the veteran's benefits in this case should inure to the benefit of a state. That statute reads in pertinent part:

Payment to and supervision of guardians.

\* \* \* \* \* \*

(e) Any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from benefits payable under laws administered by the Veterans' Administration, which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Veterans' Administration, and shall be deposited to the credit of the applicable revolving fund, trust fund, or appropriation.

38 U.S.C. § 3202(e). Thus, section 3202(e) provides in substance that veteran's benefits unused by one who dies intestate and without heirs—funds which would otherwise escheat to the state of the decedent's residence under state law—shall instead es-

cheat back to the Government to be reused in veterans' programs. The single most striking characteristic of this statutory scheme is its purpose and effect—to guard in all events against the possibility that such benefits could become a windfall to the state in which the recipient resides. The New York State Court of Appeals, in a case not involving the imposition of state estate taxes, recognized this principle in a unanimous opinion:

> Subdivision (3) of section 450 of title 38 of the United States Code Annotated [now 38 U.S.C. § 3202] is a plain statement that whenever Federal war pension funds in a decedent's estate would otherwise escheat to a State, they are to escheat to the Federal Government to be used by the Veterans' Administration. A similar purpose of preventing profit to a State out of funds originally provided by the United States Veterans' Administration is expressed in other related Federal laws . . . .

*In re Hammond's Estate,* 3 N.Y.2d 567, 570–71, 170 N.Y.S.2d 505, 507, 147 N.E.2d 777, 778 (1958).

The State places great reliance upon the 4-to-3 decision of the New York State Court of Appeals in *In re Estate of O'Brine, supra,* where that court held the Government's interest under 38 U.S.C. § 3202(e) to be subject to New York State estate taxes, the very dispute at issue herein. However, this Court believes that the state court majority erred by failing to give sufficient weight to the recognized congressional intent behind the escheat provisions of section 3202(e) and by failing to read this section in conjunction with the related provisions of the same title.

The *O'Brine* majority did not question the power of the Government to achieve the result which it seeks herein.

> Initially we note that we do not doubt that the Federal Government has authority to provide that all funds of a decedent's estate which were derived from benefits paid under laws administered by the Veterans' Administration shall revert to the United States, without diminution

by State estate taxes, where the decedent dies intestate leaving no distributees. The pertinent and much narrower question here is whether such a result is commanded by the present provisions of subdivision (e) of section 3202. We agree with the courts below that it is not.

*Id.* at 83–84, 371 N.Y.S.2d at 455, 332 N.E.2d at 328. The state court took a narrow view of section 3202(e), finding that it acted only to entitle the Veterans Administration to "such funds as would pass into custodial possession of the State" pursuant to the state's escheat law. *Id..* Thus, the court concluded that if part of these funds went to the state by taxation rather than by escheat, the federal law would not thereby be offended. In reaching its conclusion, the majority did not consider the various other federal statutes dealing with the disposition of a veterans' funds in the event of the veteran's death intestate and without heirs but discussed state statutes dealing with or relating to "abandoned property," *i. e.,* N.Y.S.C.P.A. § 2222(1) and N.Y.Aband. Prop.Law §§ 600(1)(b) & 602(2). This Court agrees with the *O'Brine* dissenting opinion that "[t]he statutory provisions, relied upon by the majority, are not persuasive. In each instance, the statute presupposes the existence of an heir or distributee, a situation not present here." 37 N.Y.2d at 87, 371 N.Y.S.2d at 459, 332 N.E.2d at 330. Moreover, the majority gave no attention to other relevant statutes indicative of the congressional intent as to disposition of the estates of veterans other than to note that the prohibition imposed by the Congress in 38 U.S.C. § 3101(a) against the taxation of veterans' benefits does not extend to estate taxes. *Id.* at 86, 371 N.Y.S.2d at 457–58, 332 N.E.2d 326.

A clarifying light is shed on the congressional understanding of section 3202(e) by the provisions of an adjacent subsection, 3202(d). There Congress required that payments of benefits withheld for various reasons during the veteran's lifetime be made to the beneficiary's personal representative upon his death, with the clear exception that "payment will not be made to his per-

sonal representative if, under the law of his last legal residence, his estate would escheat to the State." In other words, funds not yet paid out by the Veterans Administration but to which the veteran or his estate would otherwise be entitled are simply retained permanently by the Government if the veteran dies under the exact same conditions as trigger the escheat of funds already paid out in section 3202(e). Thus, by providing that section 3202(d) funds would remain in federal control, the Congress removed these funds from the reach of state estate taxes. If Congress had intended that state estate taxes be paid on property the Government had given to a veteran's Committee, however, as the *O'Brine* court held, its failure to provide in section 3202(d) for payment of such taxes before escheat of funds belonging to the veteran but not yet paid to his Committee is inexplicably inconsistent.

In section 3202(d) Congress also provided for the payment of the funeral expenses of a deceased beneficiary to the person who bore them, but specifically excluded "political subdivisions of the United States" from those who could receive such reimbursement, again demonstrating its intent to preclude the states from enjoying any benefit under this program.

Similarly, Congress has clearly stated that the states are to receive no benefit from the veterans program in two provisions dealing with life insurance. Thus, 38 U.S.C. § 750 states that no payment of United States Government Life Insurance "shall be made to any estate which under the laws of the residence of the insured or the beneficiary, as the case may be, would escheat but same shall escheat to the United States." A like provision, that "[i]n no event shall there be any payment to the estate of the insured or of the beneficiary of any sums unless it is shown that any sums paid will not escheat," appears in 38 U.S.C. § 717(d) dealing with National Service Life Insurance. Neither of these provisions makes any express exception for payment of estate taxes or other charges against the estate.

Furthermore, had Novotny died while still confined to a Veterans Administration Hospital, all of his personal property, including property he may have received from nongovernmental sources, would have vested in the Government under 38 U.S.C. § 5220(a), which provides that

> [w]henever any veteran (admitted as a veteran) . . . shall die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Veterans' Administration, and shall not leave surviving him any spouse, next of kin, or heirs entitled, under the laws of his domicile, to his personal property as to which he dies intestate, all such property, including money and choses in action, owned by him at the time of death and not disposed of by will or otherwise, shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund
>
> . . . . .

This Court has recently held that New York State cannot impose an estate tax on the property payable to the United States by reason of this statute. *In re Levy, supra.*

Turning directly to the provisions of section 3202(e), under which the United States claims the estate of William Novotny in this action, it becomes clear that Congress did not intend any greater benefit to the states than under the above sections. In incorporating state law, Congress intended only that such law should be applied to determine whether the proceeds of the veteran's benefits would go to persons *other than* the state. If, however, the applicable state law indicated that the property should pass to the state, then the Congress required that the funds be returned to the United States to avoid such benefit to a state. Yet, when Congress wished to allow the states to benefit, it knew how to say so. In this same section it provided that "expenses of any administration necessary to determine that an escheat is in order" could be deducted from the funds escheating to the United States. Although estate taxes are also normally a part of such administration, Con-

**1034**

gress specifically refrained from making provision for their payment, either in the case of money withheld from a decedent, 38 U.S.C. §§ 717, 750, 3202(d), or money to be returned to the United States from a decedent. *Id.* § 3202(e).

The New York Court of Appeals in *O'Brine* narrowly viewed section 3202(e) as applying only to those funds held by a fiduciary for an incompetent veteran which would escheat to a state and then concluded that if part of these funds went to New York State by taxation rather than by escheat, the federal law would not thereby be offended. The basic flaw in this reasoning is that it assumes that while Congress expressly prohibited states from any gain from the estate of intestate veterans under state escheat laws, it nonetheless expressed the silent desire to permit the states to achieve the same result by estate taxation. A careful examination of the statutes governing veterans' benefits reveals that far from having such a silent desire, Congress consistently prevented the States from benefiting from circumstances such as that treated in section 3202(e).

■ Aside from the clear congressional intent that the state not benefit through taxation or otherwise in the estate of a deceased veteran under section 3202(e), as a matter of statutory construction the veteran's benefits paid to Novotny's Committee were not part of his gross estate for estate tax purposes. Section 3202(e) does not effect an escheat in the ordinary sense of the word. Although the statute speaks of an "escheat" to the State and an "escheat" to the Government, in the latter case what is really involved is a reversion.[1] This construction has been recognized in numerous decisions. *Coakley v. Attorney General,* 318 Mass. 508, 62 N.E.2d 659, 660 (1945); *In re Gonsky's Estate,* 79 N.D. 123, 55 N.W.2d 60, 67 (1952); *In re Estate of Warpouske,* 222 Or. 40, 352 P.2d 539, 547 (1960), *rev'd on other grounds sub nom. United States v.*

*Oregon,* 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *see In re Lindquist's Estate,* 25 Cal.2d 697, 154 P.2d 879, 886 (1944), *cert. denied,* 325 U.S. 869, 65 S.Ct. 1410, 89 L.Ed. 1989 (1945); *In re Estate of Plich,* 141 Colo. 425, 348 P.2d 706, 709 (1960) (*en banc*). More important, the courts of New York have also recognized that section 3202(e) creates a contingent reversionary interest in the federal government. *In re Hammond's Estate, supra; In re Regan's Estate,* 18 Misc.2d 463, 465, 185 N.Y.S.2d 350, 352 (Surr.Ct.1959); *In re Price's Estate,* 199 Misc. 833, 834, 104 N.Y.S.2d 518, 520 (Surr.Ct.1951).

The reference in section 3202(e) to state law of escheat is designed only to provide a method by which it can be determined whether the reversionary events have occurred. It should not be taken to indicate that section 3202(e) property is part of the deceased's estate for all purposes; rather, such property becomes part of the estate only if escheat is found *in*applicable by reason of state law, i. e., if the property will pass to a person or persons entitled to it under state law. If Novotny died without devisees or distributees—the generally recognized prerequisite to escheat—then by operation of section 3202(e) at the time of death neither he nor the State had any interest in the unused pension benefits paid to him by the Veterans Administration, for these benefits reverted immediately to the United States. The benefits, granted upon the terms set forth in section 3202(e), did not fall into the estate of Novotny because they reverted to and immediately revested in the United States. See N.Y.E.P.T.L. §§ 6–1.1(a)(3), 6–3.2(a)(1)(B) & 6–5.2.

■ Thus, these funds are not subject to New York's estate tax, which is a tax on *transfers* from the deceased to another. N.Y. Tax Law § 952(a). Novotny *transferred* nothing from his estate to the United States. ·The property *reverted* to the United States solely by virtue of the condition

---

1. The distinction between an escheat and a reverter is important because escheating property may be subject to estate taxes. *Senft v. United States,* 319 F.2d 642 (3d Cir. 1963)

(funds escheating to Pennsylvania includable in federal taxable estate and not deductible as a bequest, devise or transfer to a state under 26 U.S.C. § 2055(a)).

of the original grant to him and did not, even for one moment, form any part of his estate.[2]

It is firmly established that property of the United States is not subject to taxation by the states. *United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). Although a state may impose estate taxes on property passing *by will* to the United States, since such taxes are actually taxes upon the right to devise property, this principle has no application to the present case where the property has passed to the United States solely by reason of federal law. Thus, to tax the section 3202(e) funds at issue here would not be to tax the decedent's right to transfer but rather the right of the United States to assert its reversionary interest in the property it gave to the decedent with a reservation of just such an interest. The state tax here would fall directly upon the exercise by the United States of its federally created right. Furthermore, it would also increase directly the burden upon the Government of maintaining the federal veterans' benefit structure by annexing federal funds otherwise payable to a revolving fund for maintaining the benefit programs. To impose the New York State estate tax on property escheating to the United States under section 3202(e) is therefore clearly repugnant to the Supremacy Clause of the Constitution of the United States.

Accordingly, the motion of the State requesting the Court to abstain pursuant to 28 U.S.C. § 1341 is denied, and the motion of the Government for summary judgment is granted declaring that property passing to it pursuant to 38 U.S.C. § 3202(e) does so free of New York State estate taxes. Submit judgment in conformity herewith.[3]

---

**2.** Since the State, despite the contrary rulings of its own courts and the courts of other states, denies the existence of a reversionary interest in the Government, it does not reach the argument that such reversionary interest was subject to a testamentary general power of appointment and therefore includable in Novotny's gross estate by virtue of Section 2041 of the Internal Revenue Code of 1954, 26 U.S.C. § 2041.

However, even if the pension benefits are includable in the decedent's gross estate by virtue of his possession of a power of appointment over them, his estate is entitled to a deduction for the amount of these funds. Novotny's failure to exercise the power of appointment allowed this property to revert to the United States. Section 2055(b)(1) of the Internal Revenue Code, 26 U.S.C. § 2055(b)(1), provides that property which is includable in the decedent's gross estate by virtue of his possession of a general power of appointment over that property, which property is received by a donee described in that section including the United States, shall be considered a bequest of such a decedent and therefore deductible from his gross estate as a charitable bequest.

Novotny died without exercising the power of appointment he possessed over his pension benefits. But for his possession of the power of appointment, the pension benefits were not part of his gross estate. Upon his failure to exercise his power of appointment the funds passed to the United States by virtue of its reversionary interest. Therefore, pursuant to 26 U.S.C. § 2055(b), the full amount of the benefits reverting to the United States at the decedent's death are a charitable deduction to his estate and not subject to estate taxation. *Cf. Senft v. United States, supra* (construing 26 U.S.C. § 2055(a) which requires a donative intent unlike § 2055(b) which looks only to receipt by the donee). This is true under both the Federal and New York State estate taxes because under New York law the gross estate is defined by the Federal statute, N.Y. Tax Law § 954, and the deductions under New York law are determined by the Federal deductions. *Id.* § 955. Accordingly, the result reached herein would not be affected by such a construction.

**3.** The Court was advised that the parties expected to settle amicably the disposition of the state bonus received by Novotny's Committee and also the disposition of Social Security Benefits paid to the Committee beginning in 1967. Such settlement may be incorporated in the judgment herein.