UNITED STATES of America and the Post Fund, National Homes, Department of Veterans Affairs, Plaintiffs,

v.

THE RIGGS NATIONAL BANK OF WASHINGTON, D.C., TRUST GROUP, Defendant.

No. CIV.A. 98–1759 SSH.

United States District Court, District of Columbia.

July 6, 2000.

AUSA Claire M. Whitaker, U.S. Attorney's Office for the District of Columbia, Washington, DC, for Plaintiffs.

Steuart H. Thomsen, James J. Briody, Sutherland, Asbill & Brennan, Washington, DC, for Defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are (1) plaintiffs' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56, defendant's opposition thereto, and plaintiffs' reply; and (2) defendant's motion for stay of proceedings under certain circumstances. Because the Court considers affidavits outside of the pleadings, the Court treats plaintiffs' motion as a motion for summary judgment. Fed.R.Civ.P. 12(c).

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Upon consideration of the entire record, the Court grants plaintiffs' motion for summary judgment and denies defendant's motion for a stay. As requested by both parties, the Court defers ruling on Riggs's offset claim for Riggs's expenses to be paid out of the conservator's account. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice,* 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

### Background

Harro V. Miller entered the United States Army in 1944. After being adjudged mentally incompetent, he received 100% service-connected disability benefits from plaintiff Department of Veterans Affairs ("VA"), from May 1944 until his death on September 9, 1993. In 1966, this Court appointed defendant Riggs Bank, N.A. ("Riggs") as conservator for Miller's property, in which capacity Riggs served until Miller's death in September 1993. Riggs was designated the payee for the VA benefits paid to Miller, which were maintained in an account that is the subject of this lawsuit.

In July 1993, Miller was placed in Montvue Nursing Home in Luray, Virginia, under an indefinite contract with the VA to furnish care. Up to Miller's death on September 9, 1993, plaintiffs maintain that he was being furnished care by the VA at the Montvue Nursing Home. *See* Decl. of Teresa Richards, Medical Records Coordinator at Montvue Nursing Home, Ex. A to Pl.'s Mot. for Judgment. Plaintiffs assert that his actual place of death was the Page Memorial Hospital in Luray, Virginia. *See* Supp. Decl. of Paul J. Hutter, Asst. Re-

gional Counsel, Dept. of Veterans Affairs, Att. A to Pl.'s Reply. Riggs, however, disputes the actual place of death and maintains that Miller died at the University of Virginia Hospital in Charlottesville, Virginia, based on information gathered by its hired investigators and its own conversation with Montvue Nursing Home. Miller left no will. The funds in the conservatorship account now total in excess of $566,000, derived solely from the VA benefits.

As a conservator, Riggs requires approval of the Probate Division of the Superior Court of the District of Columbia ("Probate Division") to close out the conservatorship. On November 30, 1993, Riggs filed a Final Account for the conservatorship. On August 31, 1994, the VA filed a letter with the Probate Division asserting that the funds were the property of the United States government by operation of 38 U.S.C. § 5502(e) and should be released to the VA immediately; the statute mandates that funds derived solely from the payment of VA benefits that would otherwise escheat to the state in the absence of any heirs immediately revert to the United States upon the veteran's death. The Probate Division approved the Final Account on November 2, 1994, while noting the VA's claim and the letter filed by the VA, and indicating that Riggs needed to file a Certificate of Distribution and Settlement to complete administration of the conservatorship.

Between November 1994 and May 1995, Riggs and the Probate Division exchanged letters over why Riggs had not filed the requisite certificate, with Riggs indicating that it had not filed a certificate yet because no personal representative had been appointed nor had a probate estate been opened. In February and March 1995, Riggs hired the Pinkerton Investigation Services to determine if Miller had any living heirs; after an extensive and diligent search, none was found. *See* Report of Pinkerton Investigation Service, Ex. B

to Ex. 1 to Def.'s Mem. in Resp. to Pls.' Mot. ("Pinkerton Report"). Instead of filing a Certificate of Settlement and Distribution, Riggs filed, on May 11, 1995, a Petition for Instructions for Distribution of Ward's Estate, proposing to distribute Miller's remaining funds directly to the VA under the authority of 38 U.S.C. § 5502(e) and requesting an order that no probate administration be required.

On August 25, 1995, the Probate Division issued an opinion stating that, although Riggs had determined that no heirs existed (and thus the provisions of 38 U.S.C. § 5502(e) seem to have been met), such a determination may not be made "without publication pursuant to D.C.Code Section 20-704 by a duly appointed personal representative, notwithstanding the private investigation for heirs conducted by the conservator." *See* Probate Div. Order, Aug. 25, 1995, Ex. D. at 4, Pl.'s Mot. for Judgment ("Probate Div. Order").[1] The Probate Division then ordered Riggs to distribute the balance of the conservatorship assets to a duly appointed personal representative of Miller's estate in order to determine that no heirs exist consistent with D.C. law. That Order remains in effect. To date, however, no one has instituted a probate proceeding, and consequently, no personal representative has been appointed. Riggs therefore has not distributed the funds in accordance with the Probate Division's Order. In 1998, plaintiffs initiated this lawsuit to obtain the funds from Riggs.

### Analysis

■ Congress has the power to dictate "that the personal property left by its wards when they die in government facilities shall be devoted to the comfort and recreation of other ex-service people who must depend upon the Government for care." *United States v. Oregon*, 366 U.S. 643, 649, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961). Pursuant to this power, Congress

---

1. The Order itself was signed by Superior Court Judge Margaret A. Haywood, while a fuller explanation of the Order was submitted by the Register of Wills, Laura Banks Reed.

enacted two statutes relevant to this case. If a veteran dies while in a facility administered exclusively by the VA, or any hospital while being furnished care by the VA, and leaves no heirs, 38 U.S.C. § 8520 mandates that:

> (a) Whenever any veteran ... shall die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Department, and shall not leave any surviving spouse, next of kin, or heirs entitled, under the laws of the decedent's domicile, to the decedent's personal property as to which such person dies intestate, all such property, including money and choses in action, owned by such person at the time of death and not disposed of by will or otherwise, ***shall immediately vest in and become the property of the United States as trustee*** for the sole use and benefit of the General Post Fund .... (Emphasis added.)

Moreover, any time a veteran dies and his estate contains funds derived from veterans' benefits that, under state law, would escheat to that state, 38 U.S.C. § 5502(e) provides that:

> Any funds in the hands of a fiduciary appointed by a State court or the Secretary derived from benefits payable under laws administered by the Secretary which under the law of the State wherein the beneficiary had last legal residence would escheat to the State, *shall escheat to the United States* and shall be returned by such fiduciary, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Department, and shall be deposited to the credit of the applicable revolving fund, trust fund, or appropriation. (Emphasis added.)

Plaintiffs assert that, under either of these statutes, the funds in the Riggs account should have vested or escheated immediately to the United States, since Miller died in a hospital while under the care of the VA and he has unclaimed property, and Riggs has determined, through the use of a private investigator, that Miller has no surviving heirs.[2] Further, no heirs have come forward since his death in 1993 to claim any of his property. The Probate Division, however, upon consideration only of § 5502(e), held that an estate must be opened to determine whether any heirs exist, because "[a]lthough petitioner has conducted an investigation into the existence of heirs, this method of notification is not proscribed [*sic*] by statute."[3] Probate Div. Order at 2. The Probate Division noted that the language of § 5502(e) seems to contemplate opening an estate in order to determine whether the veteran's estate will escheat to the federal government since the statute provides that the funds shall escheat to the VA "less legal expenses of any administration necessary to determine that an escheat is in order." Probate Div. Order at 3.

The first question before the Court is whether the statutes at issue require that a probate proceeding be opened before the funds may escheat to the federal government. Defendant states that it is unclear whether the statutes require a state court proceeding to determine whether there would be an escheat to the state or whether there are any heirs prior to distribution to the VA, and they seek this Court's interpretation. If the Court determines that no probate proceeding is required, Riggs also moves for a stay of proceedings so that it may seek reconsideration of the Superior Court order, so as not to risk facing two conflicting court orders. Plaintiffs oppose the request for stay as a stay would delay their entitlement to the funds,

---

2. Several courts have noted that although the statutes use the term "escheat," what is really involved is a contingent reversionary interest. *E.g., Matter of Estate of Novotny,* 446 F.Supp. 1027, 1034 (S.D.N.Y.1978).

3. The Probate Division considered only 38 U.S.C. § 5502(e) because that was the only statute raised in submissions to that court.

particularly because they assert that no probate proceeding is necessary. The Court therefore will consider whether a stay should be imposed, or whether the Court should determine plaintiffs' entitlement to the funds under the applicable statute. If the Court determines that plaintiffs are entitled to the funds, the Court will defer ruling on Riggs's claim of offset, as requested by the parties, and instead request further briefing on Riggs's offset claim.[4]

### A. Whether a probate proceeding is necessary

█ It is clear that the United States may initiate or participate in a probate proceeding to assert a claim of entitlement. *E.g., Oregon,* 366 U.S. at 643, 81 S.Ct. 1278. Nothing, however, indicates that a probate proceeding is required before funds may revert to the VA, where, as in this case, (1) no one has initiated probate proceedings in the seven years following the veteran's death, (2) no personal representative has been appointed, (3) extensive private investigation has shown that no heirs exist, and (4) the five-year period during which statutory claims may be made once the funds have reverted to the United States under 38 U.S.C. § 8526 has expired. Furthermore, nothing requires the VA to act as a representative for the veteran to open a probate proceeding, if no other person initiates such a probate proceeding. A state court cannot make the United States initiate a probate proceeding. *See McCulloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 426, 4 L.Ed. 579 (1819).

### i. 38 U.S.C. § 8520

Although this question has not been squarely addressed by many courts, the Court looks to a handful of other courts that have concluded that the two statutes at issue are self-executing and do not re-

quire a probate proceeding as a condition precedent to the VA's entitlement to the funds. The Northern District of Illinois has stated in two similar cases that "[t]he provisions of 38 U.S.C.A. §§ 17–17j [now 38 U.S.C. § 8520] are self-executing and probate or administration proceedings are not conditions precedent to the defendant's [the bank's] release of said funds to the plaintiff [United States]." *United States v. Peoples National Bank of Chicago,* 121 F.Supp. 331, 333 (N.D.Ill.1953). *See United States v. The Mid City Natl. Bank of Chicago,* 121 F.Supp. 402, 404 (N.D.Ill. 1953) (same). The facts of those two cases are very similar to each other and to those in the present case: a veteran died while a patient in a VA hospital, no administration of his estate had been instituted or contemplated, and it appeared that the veteran left no heirs entitled to his personal property under state laws. The veteran in each case did sign a document as a condition precedent to his admission to the VA hospital stating that, in the event of his death while under care, he was leaving no heirs or next of kin. In each case, the court determined that the veteran died intestate without any heirs, and no claims on his estate had been asserted.

█ Aside from these cases, the Court has examined other parts of the statutory scheme that indicate that the statutes are self-executing and do not contemplate that a probate proceeding is required in all cases. For example, 38 U.S.C. § 8524 describes alternative handling of claims upon the decedent's property, depending on whether there is a probate proceeding. The statute provides:

> If there is administration upon the decedent's estate such assets, other than money, upon claim therefor within the time required by law, shall be delivered by the administrator of the estate to the Secretary or the Secretary's authorized representative, as upon final distribu-

4. Riggs claims that if plaintiffs are entitled to the funds, they are not entitled to the full amount because Riggs's expenses, including

its legal expenses, are to be paid out of this account.

tion; and upon the same claim there shall be paid to the Treasurer of the United States for credit to the Fund any such money, available for final distribution. *In the absence of administration,* any money, chose in action, or other property of the deceased veteran held by any person shall be paid or transferred to the Secretary upon demand by the Secretary or the Secretary's duly authorized representative, who shall deliver itemized receipt therefor. (Emphasis added.)

Moreover, 38 U.S.C. § 8526 contains evidence that a court determination is not required for funds to vest in the United States under 38 U.S.C. § 8520, in stating that the crediting of the assets to the VA may be made upon "determination by a court *or the Department* pursuant to section 8520." (Emphasis added.)

The statutory scheme also contains several mechanisms that address any funds that may have been improperly credited to the VA where there are in fact heirs or other creditors. For example, when the VA receives funds by operation of 38 U.S.C. § 8520, the funds escheat to the United States "as trustee." 38 U.S.C. § 8526 then allows an opportunity for any unknown or potential heirs to come forward and lodge a claim within five years of the veteran's death.[5] 38 U.S.C. § 8524 provides a waiver of liability to custodians like Riggs for claims made after the funds are transferred to the VA in the absence of administration. "Such payment or transfer shall constitute a complete acquittance of the transferor with respect to any claims by any administrator, creditor, or next of kin of such decedent." 38 U.S.C. § 8524. Thus, the statutory scheme does little to indicate that a probate proceeding is required, but rather, provides evidence

that a probate proceeding is not necessarily required.

For comparative purposes, the Court notes a similar federal statute governing deceased residents of the Armed Forces Retirement Homes ("Homes"), with regard to which the Probate Division has concluded that a Home need not participate or initiate a probate proceeding to be entitled to federally-provided funds in certain circumstances. In *In re Estates of Ficara, et al.,* Admin. Nos. 924–88, 353–94, 2356–94 (Mem. Op. and Order, June 30, 1997), the Probate Division considered the interaction between District of Columbia probate laws and 24 U.S.C. § 420. *See* Ex. C to Pl.'s Mot. The federal statute provides that when a veteran who is a resident of a Home dies intestate and his heirs or the legal representative of the deceased cannot be immediately ascertained, the Home must retain all the property for three years thereafter; only if the estate has not been disposed of after that 3–year period does the estate escheat to the Retirement Home. That statute similarly makes no reference to any required probate proceeding when a veteran dies intestate to determine the existence of heirs. The Probate Division noted that "where no one else comes forward to obtain letters of administration, the Home can merely wait out the three-year claim period and take control of the decedent's personalty, without any permission of the Superior Court. This, indeed, is the self-executing nature of the federal law." *Ficara,* Mem. Op. and Order at 12.

The Court finds that while the *Ficara* decision is not dispositive in this case because the statute operates somewhat differently from the one here, the reasoning is sound. It makes sense that if no probate proceeding is opened for nearly seven years after a veteran's death and no other

---

5.  38 U.S.C. § 8526 provides in pertinent part: Notwithstanding the crediting to [General Post Fund] of the assets, or proceeds thereof, of any decedent, whether upon determination by a court or the Department pursuant to the provision of section 8520 of this title, any person claiming a right to such assets may file a claim on behalf of such person and any others claiming with the Secretary.

heirs come forward within five years after the veteran's death, then the United States should be entitled to those funds under 38 U.S.C. § 8520 without a probate proceeding. "The congressional plan [in § 8520] is that whatever little personal property veterans without wills or kin happen to leave when they die in veterans' homes and hospitals should be paid into the General Post Fund, to be used for the recreation and pleasure of other ex-service men and women who have to spend their days in veterans' homes and hospitals." *Oregon,* 366 U.S. at 647, 81 S.Ct. 1278. This plan is best borne out by allowing the funds to escheat to the VA where there is some proof that no heirs exist, without necessarily requiring a probate proceeding, and then allowing any unknown heirs five years after the veteran's death to make any claims on the funds under 38 U.S.C. § 8526. Due process concerns are satisfied by the five-year period set forth in 38 U.S.C. § 8520.

### ii.   38 § 5502(e)

■ The Court also finds that 38 U.S.C. § 5502(e) does not require, in all instances, a probate proceeding to determine the possible existence of heirs. Again, the Court looks to two similar New York state decisions that have interpreted the predecessor to 38 U.S.C. § 5502(e), as well as 38 U.S.C. § 8520, as self-executing. *See In re Regan's Estate,* 18 Misc.2d 463, 185 N.Y.S.2d 350, 352–3 (N.Y.Sur.1959); *In re Bonner's Estate,* 192 Misc. 753, 80 N.Y.S.2d 122 (N.Y. Sur.1948). In *Regan's Estate,* the hospital records for a veteran who died while in a VA hospital disclosed no next of kin other than a brother whose whereabouts were unknown, and the veteran's distributees could not, with due diligence, be ascertained at that time. The VA claimed all of his assets, that had been fully derived from VA benefits, under 38 U.S.C. § 5202, but the public administrator rejected the VA's claim under the predecessor to § 5502(e) because the VA had "no adequate proof that decedent died without known heirs." In *Bonner's Estate,* a veteran died intestate at a VA hospital

and his distributees could not with diligence be ascertained; again, the United States claimed his assets by virtue of the predecessor to § 5502(e) and § 8520, but were denied by the state administrator because the statutes purportedly "were not operative unless and until the Federal Government meets the burden of proving that the decedent left no distributees." 80 N.Y.S.2d at 125.

In both cases, the court found that "[t]he government does not have the burden of proving the decedent left no distributees as a condition precedent to its right to the unexpended fund." *In re Regan's Estate,* 185 N.Y.S.2d at 352–53. *See In re Bonner's Estate,* 80 N.Y.S.2d at 126–27 ("[t]he intent of Congress in enacting this legislation would seem to have been to recapture unexpended benefits conferred upon veterans who die in government institutions leaving no distributees entitled to their personal estates.... To cast upon the United States the burden of proving an escheat would effectively thwart the Congressional intent."). In particular, in *Bonner's Estate,* the New York court found that the United States was entitled to the funds, subject to any claims presented within five years of the date of death as provided in the predecessor to 38 U.S.C. § 8526, which allows claims to be made by unknown heirs on money that reverts to the United States. The court determined that the veteran did not leave any heirs who would be entitled to his personal property under the laws of his domicile, or "at least that is the inference to be drawn where no one has appeared despite the lapse of over three years since his death, the diligent efforts of the public administrator to locate next of kin, and the publication of notice in this proceeding. At this point no private person is 'entitled' to this decedent's estate." *Bonner's Estate,* 80 N.Y.S.2d at 127.

Although 38 U.S.C. § 5502(e) addresses the possibility of a probate proceeding by referring to transferring funds back to the

VA "less legal expenses of any administration necessary to determine that an escheat is in order," this does not require that an administration is necessary in every case, such as in this case. Here, where all evidence indicates that no heirs exist, an administration does not appear to be necessary. At least one court has stated that under 38 U.S.C. § 5502(e), if a veteran dies "without devisees or distributees—the generally recognized prerequisite to escheat—then by operation of section 3202(e) [predecessor to § 5502(e)] at the time of death neither he nor the State had any interest in the unused pension benefits paid to him by the Veterans Administration, for these benefits reverted immediately to the United States." *Matter of Estate of Novotny*, 446 F.Supp. 1027, 1034 (1978). The property never becomes a part of the deceased's estate; "such property becomes part of the estate only if escheat is found *in* applicable by reason by state law, *i.e.,* if the property will pass to a person or persons entitled to it under state law." *Id.*

■ Furthermore, as with § 8250, if funds revert to the VA under 38 U.S.C. § 5502 immediately upon a veteran's death, then any unknown heirs could still submit a claim upon those funds within five years of the death of the veteran under 38 U.S.C. § 8526. *See In re Regan's Estate*, 185 N.Y.S.2d at 353. Congress presumably has deemed those five years to provide sufficient due process to unknown heirs. Since more than five years have expired in this case, there is no reason to require a probate proceeding simply to allow publication by notice to potential heirs. The amount of time that has passed since Miller's death without any heirs inquiring into his whereabouts or making claims or opening a probate proceeding sufficiently satisfies any due process concerns that may have troubled the Probate Division at the time the Clerk issued its Order. The Court therefore concludes that, under the facts presented here, no probate proceeding is required.

## B. Request for stay of proceedings and plaintiffs' entitlement to the funds

■ The Court finds that a stay for Riggs to request reconsideration of the Probate Division Order is not necessary. Riggs argues that if this Court rules that no state proceeding is required to determine that Miller has no heirs, Riggs would be subject to inconsistent court obligations. *See* Ans. at ¶ 27. However, the Court believes that imposing a stay effectively would amount to conditioning the VA's entitlement to the funds on a state court proceeding, which the Court has determined is not required. "Under the intergovernmental immunity component of Supremacy Clause jurisprudence, the states may not directly regulate the federal government's operations or property." *State of Arizona v. Bowsher*, 935 F.2d 332, 333 (D.C.Cir.1991). Furthermore, the parties did not present to the Probate Division for its consideration the effect of 38 U.S.C. § 8520 and § 8526, which provides the five-year claims period for unknown heirs to come forth. This Court's opinion that no probate proceeding is required is based upon the circumstances as presented now, seven years after Miller's death with no heirs having come forward and the five-year claims period having lapsed; the Probate Division's Order was based on more limited information and different circumstances at an earlier time. Lastly, Riggs's transfer of funds to the VA will constitute a "complete acquittance" with respect to any claims by any administrator, creditor, or next of kin of the decedent, under 38 U.S.C. § 8524.

The Court therefore will consider whether plaintiffs have met the provisions of either statute. As for 38 U.S.C. § 8520, Riggs has acknowledged that based on its thorough investigation, no heirs were found. Pinkerton Investigation Services reviewed medical records and family history files and conducted numerous interviews. *See* "Report of Investigation," Ex.

B. to Def's. Mem. In Resp. to Pl.'s Mot. Moreover, no heirs have come forward in the seven years since Miller's death. However, defendant has pointed out that genuine issues of material fact exist as to Miller's place of death and whether the VA provided the funding for Miller's care where he died. Conflicting information has been provided as to whether Miller died in Page Memorial Hospital in Luray, Virginia, or in the University of Virginia Hospital in Charlottesville, Virginia. Plaintiffs attach a declaration of Paul J. Hutter, Assistant Regional Counsel at the Department of Veterans Affairs in Washington, D.C., that indicates that Miller was being provided funds through the VA at the time of his death, and that the VA paid for Miller's care at both the Montvue Nursing Home and the Page Memorial Hospital, for a total cost of $5,826.80. *See* Supp. Decl. Of Paul J. Hutter, Att. A to Pls.' Reply. The declaration from Teresa Richards, Medical Records Coordinator for the Montvue Nursing Home is inconclusive, as it states only that Miller "was a resident/patient of the Montvue Nursing Home from July 1993 until the time of his death in September 1993." If Hutter's declaration is correct, then it would be clear that all the conditions of § 8520 would be met, and that plaintiffs should be entitled to the funds under § 8520.

However, Riggs states in a footnote in its opposition that Riggs's counsel had telephone conversations with Montvue Nursing Home in which the Nursing Home indicated that "shortly before his death, Miller was transferred from Montvue Nursing Home to Paige Memorial Hospital and then to the University of Virginia Hospital where he died." Def.'s. Opp. at 10 n. 6. The Pinkerton Report also includes a letter written from Pinkerton Investigation Services to the University of Virginia Hospital requesting information

on any known heirs in their files, stating they understood that "Mr. Miller died at the University of Virginia on September 9, 1993." A response from Carolyn S. Morris, Correspondence Secretary in the Medical Records Department of the University of Virginia Health Sciences Center, provides a medical record number for Miller and indicates simply that no relative was listed in his file. *See* Pinkerton Report. Thus, it appears that Miller did visit the University of Virginia Hospital at some point, but the letter from Morris is inconclusive as to when or if he died there.

Plaintiffs' information does not indicate that Miller was ever transferred to the University of Virginia Hospital, or that the VA provided the funding for him at that hospital, if in fact Miller died there. It is possible that the fact that the VA had an indefinite contract with Montvue Nursing Home to fund the care for Miller could be sufficient to make irrelevant the actual location of his death, but the statute requires that the veteran "die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Department." [6] *See In re Wallace's Estate*, 186 Neb. 271, 182 N.W.2d 829, 830 (1971) (statute applied to veteran who died at a nursing home while there at the government's expense). If Miller in fact died at the University of Virginia Hospital, there is no clear documentation that the VA was providing the funding for his stay at that time.

■ The Court determines, however, that the actual place of death does not affect the Court's conclusion, because plaintiffs meet the provisions set forth under 38 U.S.C. § 5502(e). That statute simply requires that the funds be "derived from benefits payable under laws administered by the Secretary which under the law of the State wherein the beneficiary

---

6. "Facility" is defined in 38 U.S.C. § 8509 as "those facilities over which the Department [of Veterans Affairs] has direct and exclusive administrative jurisdiction, including hospitals or other facilities on property owned or leased by the United States while operated by the Department." It appears clear that Miller did not die while in a "facility" as thus defined.

had last legal residence would escheat to the State. . . ." Because Riggs has determined that Miller died intestate and without heirs, and because the Court has determined that no probate proceeding is required in this case to determine if any heirs exist, then it is undisputed that the funds in the Riggs account are entirely derived from VA benefits. Therefore, the funds should revert to the United States.[7]

### C.  Affirmative defenses

The Court will consider at this time the affirmative defenses raised by Riggs, as it affects the Court's determination of whether plaintiffs are entitled to the funds.[8] Riggs contends that plaintiffs' complaint is barred by the doctrine of laches, because had plaintiffs asserted a right under § 8520 when Riggs presented the issue to the Probate Division, and had plaintiffs worked with Riggs after the Probate Division issued its Order directing that the funds be turned over to a personal representative, then "plaintiffs would have long since received the funds and Riggs would have been compensated for its then more limited expenses under 38 U.S.C. § 5502(e)." Def.'s Opp. at 13. However, the Court has previously stated that nothing requires the federal government to open a probate proceeding or serve as a personal representative. Furthermore, in light of the fact that the Court has determined plaintiffs' entitlement to the funds under § 5502(e) and not § 8520, it does not matter that plaintiffs did not raise § 8520 when the issue was being presented to the Probate Division.[9]

Riggs also argues that, to some extent, plaintiffs may be bound by the Probate Division order and estopped from bringing this action under § 8520(a) because it participated in the proceedings by submitting a letter to an Auditor in the Register of Wills. Again, because the Court ultimately determined plaintiffs' entitlement to the funds under § 5502(e), it is, as a practical matter, irrelevant whether Riggs is estopped from bringing the action under § 8520(a). Moreover, the Court finds that the fact that plaintiffs wrote a letter to the Probate Division does not constitute participating in a probate proceeding, to the extent that it would estop Riggs from bringing suit in federal court.

### Conclusion

The Court finds that it is proper for the funds in Miller's estate to escheat immediately to the VA. Accordingly, it hereby is

ORDERED, that plaintiffs' motion for summary judgment is granted, and that 38 U.S.C. § 5502(e) and 38 U.S.C. § 8520(a) do not require any further Superior Court proceeding to determine whether any heirs exist, on the facts of this case. It hereby further is

ORDERED, that defendant's motion for a stay is denied. It hereby is

ORDERED, that judgment is entered in favor of plaintiffs. It hereby further is

ORDERED, that the proceeds of the conservatorship held by defendant in the

---

7. From a practical perspective, the Court is confident that its conclusion provides a sound solution in this situation. Despite the lack of notice by publication, it seems quite clear that Miller left no heirs. The Probate Division itself acknowledged that "in practice, investigations have tended to produce results where publication has failed." Probate Div. Order at 2.

8. In explaining the Court's denial of Riggs's motion for a stay, the Court has addressed Riggs's defense that its release of funds is barred by the Probate Division's Order. The Court also rejects plaintiffs' suggestion that

the Probate Division's Order is no longer binding on Riggs because Riggs's conservatorship ended in 1993 at the time of Miller's death, subject to a final accounting. While technically true, the Court finds that Riggs has not completed "winding down" the estate, since Riggs still maintains possession of the funds and has not filed a Certificate of Distribution and Settlement.

9. Although laches does not bar plaintiffs' entitlement to the funds, Riggs may be able to recoup more of its expenses incurred as a consequence of this lawsuit.

name of Harro V. Miller be turned over to the plaintiffs within fourteen days of the date of this Order and a full accounting be provided. It hereby further is

ORDERED, that to the extent raised by plaintiffs' motion, the Court defers any ruling with respect to defendant's offset claim. Within twenty-one days of the date of this Order, the parties shall submit a joint report setting forth a schedule to brief this claim, unless agreement can be reached as to the amount which may be due.

SO ORDERED.

### JUDGMENT

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that judgment is entered in favor of plaintiffs.

SO ORDERED.