OPINION OF THE COURT
F. Warren Travers, S.
William J. Weaver, decedent herein, served honorably in the United States armed forces and was wounded in September of 1918. Thereafter, he was permanently and totally disabled. On September 8, 1930, he entered a veterans’ hospital and, on January 3, 1931, he was adjudicated an incompetent in Supreme Court, Rensselaer County. Mr. Weaver remained continuously hospitalized until May 20, 1969, when he was placed on a trial visit from the Veterans’ Administration Hospital at Albany, New York. He returned to that hospital on July 18, 1972, where he died on July 28, 1972.
Letters of administration were issued to Edward W. Patti-son, Rensselaer County Treasurer, on January 16, 1973, it having been established that the decedent died intestate and that he left no distributees. The estate consisted of in excess of *74 $100,000 cash and invested funds paid over by the committee to the administrator and no real property.
The entire estate was derived from veteran’s benefits with the exception of the sum of $8,177.69, plus interest, derived from the estate of decedent’s sister, and the sum of $140.58, plus interest, which were the proceeds of two insurance policies.
A claim has been made by the United States of America to all personal property of this decedent pursuant to the provisions of sections 5220, 5221 and 3202 of title 38 of the United States Code, in that "decedent died intestate while a member or patient in a facility or hospital while being furnished care or treatment therein by the Veterans’ Administration and did not leave surviving him any spouse, next of kin, or heirs entitled under the laws of the State of New York to his personal property.”
The State of New York claims that the sum of $8,177.69, plus interest, so-called "non-veterans derived assets” should "devolve according to New York’s intestacy scheme for distribution” and should be paid to the State Comptroller, not to the United States.
In addition, thereto, the State of New York maintains that the estate is subject to a New York estate tax under article 26 of the Tax Law in the sum of $2,238.31.
Certain procedural objections have been raised relative to the timeliness of objections to account filed by the State of New York. Without passing on the procedural challenge, the court will address the two questions set forth above substantively.
As to "escheat” or "vesting” of nonveteran derived assets to the United States under subdivisions (a) and (b) of section 5220, and section 5221 of title 38 of the United
States Code
The State of New York contends that in a case such as this, where the veteran was totally disabled due to wartime injuries, the United States was obligated, under section 610 of title 38 of the United States Code, to pay for treatment of all service connected ailments; that the veteran here "is not obligated to leave his property to the United States in return.”
The State of New York also argues that the provisions of *75 the United States Code relied upon by the Federal Government are unconstitutional as applied to the facts of this case. The State claims that Congress was without power to declare an escheat to property, which was not obtained or derived from Federal benefits.
Section 5220 (1976 amendments deleted) states:
"(a) Whenever any veteran (admitted as a veteran) shall die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Veterans’ Administration, and shall not leave surviving him any spouse, next of kin, or heirs entitled, under the laws of domicile, to his personal property as to which he dies intestate, all such property, including money and choses in action, owned by him at the time of his death and not disposed of by will or otherwise, shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund (hereafter in this subchapter referred to as the 'Fund’), a trust fund prescribed by section 7255(a) (45) of title 31.
"(b) The provisions of subsection (a) are conditions precedent to the initial, and also to the further furnishing of care or treatment by the Veterans Administration in a facility or hospital. The acceptance and the continued acceptance of care or treatment by any veteran (admitted as a veteran to a Veterans’ Administration facility or hospital) shall constitute an acceptance of the provisions and conditions of this subchapter and have the effect of an assignment, effective at his death, of such assets in accordance with and subject to the provisions of this subchapter and regulations issued in accordance with this subchapter.”
Section 5221 states: "The fact of death of a veteran (admitted as such) in a facility or hospital, while being furnished care or treatment therein by the Veterans Administration, leaving no spouse, next of kin, or heirs, shall give rise to a conclusive presumption of a valid contract for the disposition in accordance with this subchapter, but subject to its conditions, of all property described in section 5220 of this title owned by said decedent at death and as to which he dies intestate.”
While it is true that the Federal Government must provide care and treatment for a veteran disabled due to wartime injuries, and while it is also true that the veteran is not obligated to leave his property to the United States in return, *76 this does not mean that Congress lacks the power to enact statutes such as sections 5220 and 5221 of title 38 of the United States Code.
These statutes are applicable in limited situations. There must first be an intestacy, and the veteran must die, while a patient in any facility or any hospital while being furnished care therein by the Veterans’ Administration.
If the veteran, prior to becoming incompetent, has executed a valid will, then his property does not go the the United States Government. Also, there must be an absence of a spouse or distributees under the laws of the State of domicile.
The constitutionality of the vesting statute (US Code, tit 38, §§ 5220, 5221) has been upheld by the United States Supreme Court in United States v Oregon (366 US 643). The court, in that case, found the language of the statute "clear and unequivocal on [its] face”, and found no need to resort to legislative history for an interpretation. (United States v Oregon, supra, p 648.)
Speaking for the majority in United States v Oregon (supra), Mr. Justice Black stated that Congress has seen fit in such a situation to take all the property of such a veteran and devote it "to the comfort and recreation of other ex-service people who must depend upon the Government for care.” (United States v Oregon, supra, p 649.)
In that opinion written by Mr. Justice Black, it was thus held that the Federal statute relied upon by the Veterans’ Administration in this case does not violate the Tenth Amendment. Mr. Justice Black stated therein, "The fact that this law pertains to the devolution of property does not render it invalid. Although it is true that this is an area normally left to the States, it is not immune under the Tenth Amendment from laws passed by the Federal Government which are, as is the law here, necessary and proper to the exercise of a delegated power.” (United States v Oregon, supra, p 649.)
It is interesting to note that the factual situation in the Oregon case is remarkably similar to the facts in the case now under consideration. In Oregon (supra), in addition to veteran-derived assets, the veteran had inherited some $13,000 from the estate of his brother. The United States Supreme Court held that all of the deceased veteran’s assets passed under the Federal statute to the United States for the use and benefit of the Post Fund. (See, also, Matter of Rodgers, 60 Misc 2d 769.)
*77 As to the claim that this estate is subject to a New York estate tax under article 26 of the Tax Law
In Matter of O’Brine (37 NY2d 81), cited by the State Tax Commission, the Court of Appeals held that the Federal statute (US Code, tit 38, § 3202, subd [e]) mandated the application of State law for the purpose of determining what funds are payable to the United States.
Subdivision (e) of section 3202 reads as follows: "Any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from benefits payable under laws administered by the Veterans’ Administration, which under the law of the State wherein the beneñciary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Veterans’ Administration, and shall be deposited to the credit of the applicable revolving fund, trust fund, or appropriation.” (Emphasis supplied.)
Judge Jones, writing for the majority, interpreted subdivision (e) of section 3202 to mean that reference to the State law of "escheat” defines not only the occasion on which the Veterans’ Administration becomes entitled, but as well the amount to which it is entitled.
Under the Federal statute above quoted, the majority in OBrine held that the law of escheat in New York State is found in the Abandoned Property Law. "It is clear that the present provisions of the Abandoned Property Law and associated statutes operate as to the property of a deceased person only after the prior deduction of both Federal and State estate taxes. Thus, under SCPA 2222 (subd 1), and section 600 (subd 1, par [b]) and subdivision 2 of section 602 of the Abandoned Property Law, it is the 'distributive share’ which is payable to the State Comptroller, and a distributive share is described by statute as the amount available for distribution after the payment of State estate taxes (EPTL 4-1.1).” (Matter of OBrine, supra, p 85.)
The majority concluded, "Thus under subdivision (e) of section 3202, the Veterans’ Administration is entitled only to *78 such funds as would pass into custodial possession of the State of New York pursuant to the provisions of the Abandoned Property Law, i.e., funds after deduction of estate taxes”. (Matter of O’Brine, supra, pp 85-86.)
The factual pattern here differs in that the deceased veteran, William J. Weaver, spent the greater part of 42 years in veterans’ hospitals and died, while a patient at the Albany, New York, Veterans’ Administration Hospital. In O’Brine (supra), the deceased veteran had been admitted to Matteawan State Hospital in 1929. He remained there until 1966 when he was transferred to Pilgrim State Hospital, where he died in 1967. The United States also based its claim on a different Federal statute.
In the case now before this court, the Veterans’ Administration asserts a claim under subdivision (a) of section 5220 of title 38 of the United States Code which states that, "all such property * * * owned by him at the time of death and not disposed of by will or otherwise, shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund”. (Emphasis supplied.)
It would appear, therefore, that in this particular statute, the Congress did not intend that the amount of funds payable to the United States be determined by New York law.
In this statute, Congress does not use the word "escheat” and directs that "all property” shall vest in the United States.
As set forth above, the constitutionality of the statute has been upheld. (United States v Oregon, 366 US 643, supra.)
See, also, Matter of Levy (574 F2d 128). In that case, Judge Lombard, commenting on section 5220, in a unanimous decision wrote, "Congress * * * preempted the state estate tax provisions insofar as they would apply to veteran’s property escheating to the United States. By its terms, § 5220 provides that 'all * * * property * * * shall immediately vest in and become the property of the United States’ * * *. Congress included no exception whatsoever for state estate taxes to be paid from such property. Indeed * * * Congress underscored the importance of this scheme by conditioning the receipt of care in a VA hospital on § 5220 (a). Thus, the plain wording of § 5220 evinces Congress’ intention to preclude any state estate taxation of veterans’ estates passing to the United States.” (Matter of Levy, supra, p 131.)
*79 As to the application of section 961 of the Tax Law of the State of New York to the Instant case
The arguments of counsel for both the United States and the State of New York also involved the effect and application of section 961 of the Tax Law of the State of New York to this case.
Under subdivision (a) of this section, a "federal determination as to (1) the inclusion in the federal gross estate of any item of property or interest in property, (2) the allowance of any item claimed as a deduction from the federal gross estate, or (3) the value or amount of any such item, shall also determine the same issue for purposes of the tax under this article unless such ñnal federal determination is shown by a preponderance of the evidence to be erroneous.” (Emphasis supplied.)
Heretofore, and on April 28, 1975, the Commissioner of Internal Revenue, in response to a request of the Veterans’ Administration, issued an opinion, later published as revenue ruling 75-533, that property passing under section 5220 of title 38 of the United States Code, is includable in the decedent’s gross estate, and that an estate tax deduction is allowable under section 2053 of the Internal Revenue Code (US Code, tit 26, § 2053), which provides for deductions for claims against the estate, and under subdivisions (a) and (b) of section 20.2053-5 of the Treasury Regulations (26 CFR 20.2053-5 [a],
[b])
In response to a New York State Tax Department request for clarification, the Internal Revenue Service on August 20, 1976 published a memorandum, which determined that the value of property passing to the United States, pursuant to subdivision (a) of section 5220 of title 38 of the United States Code, is deductible from Mr. Weaver’s gross estate for Federal estate tax purposes under section 2053 and in accordance with section 20.2053-4 of the Treasury Regulations.
In accordance with that determination, the District Director of Internal Revenue Service at Albany, New York, issued an estate closing letter to the administrator of the estate of William J. Weaver on September 24, 1976 showing gross estate tax, "None”.
The position of the New York State Tax Department is that the final Federal determination is erroneous by a preponderance of the evidence.
*80 There appear to be no factual issues, however, to be resolved. The parties do not question that the deceased was incompetent and disabled at all times relevant to these proceedings; that he died intestate without heirs or next of kin; that he died as a patient at a Veterans’ Administration Hospital; and that he left personal property which was derived both from the Veterans’ Administration and iron non-veteran sources.
Where, as here, the Federal tax authorities have allowed a deduction, the statute (Tax Law, § 961) places the burden of proof and the burden of producing evidence on the New York State Tax Commission. As pointed out by Surrogate Sobel in Matter of Tatkow (80 Misc 2d 389, 392), "It is pointless after a 'final federal determination’ for the commission to rest its contention on the provisions of a will * * * without offering extrinsic evidence to establish the Federal determination 'to be erroneous’.”
Here, in attempting to overcome the impact of section 961 of the Tax Law, the commission rests on legal argument only. The commission cites the dissenting opinion in United States v Oregon (266 US 643, supra), and the New York Court of Appeals in Matter of O’Brine (37 NY2d 81, supra).
In O’Brine, the court upheld the right of the State to impose a tax, where the deceased veteran died some place other than at a Veterans’ Administration facility. As pointed out previously, the Federal statute in question in O’Brine was subdivision (e) of section 3202 of title 38 of the United States Code. In the case now under consideration, the Veterans’ Administration relies upon subdivisions (a) and (b) of section 5220 and section 5221.
The State Tax Commission, however, has presented no extrinsic evidence of facts to demonstrate that the Federal determination was erroneous.
Accordingly, this court determines that all of the property of William J. Weaver, deceased, vested immediately upon his death in the United States as trustee for the sole use and benefit of the General Post Fund pursuant to sections 5220 and 5221 of title 38 of the United States Code. None of the property of the decedent shall be subject to a New York estate tax under article 26 of the Tax Law.
The appeal of the State Tax Commission from the pro forma order of exemption is denied on the merits. The order of *81 exemption entered herein on February 24, 1977 shall remain in effect.
The objections to account filed on behalf of the State of New York are dismissed.
Counsel for the administrator has filed a petition setting forth additional services rendered in this estate and disbursements of $18.90. An allowance for services and disbursements will be approved upon submission of a supplemental affidavit by the attorney for the administrator.