### In re GERMANOVICH'S ESTATE.
### No. 67117.

United States District Court
District of Columbia.

June 3, 1954.

Leo A. Rover, U. S. Atty., Helena D. Reed, Asst. U. S. Atty., Washington, D. C., for United States.

Una Rita Morris, Asst. Corp. Counsel, Washington, D. C., for District of Columbia.

James D. Graham, Jr. (Harrington & Graham, Washington, D. C.), for those claiming as heirs.

McGUIRE, District Judge.

On June 28, 1946 letters of administration were issued in the estate of John Germanovich, non compos decedent, to the Liberty National Bank, petitioner and hitherto duly appointed and acting committee of the estate of the decedent as an incompetent, he having died intestate in this jurisdiction on February 6, 1946. In the petition of the administrator, filed April 8, 1946, it was alleged that the decedent was not survived by a widow and "after a very careful search and inquiry to ascertain decedent's heirs at law and next of kin it appears that no such heirs at law and next of kin exist." Publication subsequently ensued, the petition indicating should this fail to dis-

close such heirs at law and next of kin that "it is the opinion of your petitioner that the estate of said decedent would escheat to the United States in accordance with Sec. 450, paragraph 3, Title 38, U.S.C." The total assets of the estate aggregate $26,599.11.

Later, on May 9, 1952, the administrator filed a further petition for a plenary proceeding to determine the next of kin, alleging that since the filing of its original petition it had been advised that there were next of kin and/or issue but that the proof presented to it was neither conclusive nor satisfactory.

The administrator further asked that a Master be appointed by the Court for the purpose of determining the true facts. On May 21, 1952 the Court, upon recommendation by the Register of Wills, authorized such a proceeding and that service by publication be had pursuant to the Code on persons not found. An order of publication was issued on June 25, 1952 and publication was had as directed and return made on September 29, 1952.

On October 13, 1952 an order authorizing the procedure above alluded to was signed and Francis W. Hill, Jr., Esquire, of this Bar, was designated and directed to hear as Master

"such evidence as may be adduced before him as to who are the next of kin of the above named decedent entitled to share in the distribution of the estate of said decedent and to report his conclusion to the Court for such determination thereof as the Court may deem meet and proper."

This order was seen and consented to by James M. Graham, Jr., attorney for the respondent unknown heirs and/or known heirs, and Helena D. Reed, Assistant United States Attorney for the United States.

The Master, after a hearing of several days at which the ostensible heirs were represented by counsel, made his report on June 1, 1953, concluding as a fact that there was "insufficient evidence to establish that John Germanovich, deceased, was survived by next of kin entitled to share in the distribution of his estate" and then, as a conclusion of law, that the claimants whose names and alleged relationship to the decedent are set forth at length in the Report, were not entitled to share.

Exceptions were filed in behalf of the claimants on June 8, 1953. However, on January 4, 1954 the Court signed an order adopting the Report of the Special Master. On this posture of the record there was a motion filed by the United States that the estate escheat to the United States since it was an estate "derived from payments made by the Veterans Administration for the benefit of the decedent," this on January 21, 1954.

The District of Columbia then appeared and filed a petition to escheat the estate to the District of Columbia. A hearing was had, it being admitted at the time of the hearing that the funds in question, as far as could be determined, derived from payments made by the Veterans Administration to the decedent, during his lifetime.

The matter was taken under advisement by the Court and in the meantime a motion was filed by the counsel for the erstwhile claimants to deposit the residue of the estate in the registry of the Court for unknown heirs, the gist of the motion being that the evidence presented before the Master was insufficient as the Master found to establish that the decedent was survived by next of kin entitled to share in the disposition *but* that he did not find that the decedent died without relatives within 5 degrees of a common ancestor as required by the statute.[1]

Later, counsel for the United States filed an affidavit on March 12, 1954 to the effect that no less than 10 investigations were made by the F.B.I. and that a summary of the reports with respect to such indicated that there were no relatives of the decedent within the United States, and that the State Department had fur-

1. Section 18-717, D.C.Code.

nished a report of similar import with reference to investigations abroad, in Yugoslavia.

■ The motion to deposit the residue of the estate in the Court for unknown heirs is denied. And under the doctrine laid down in Frazier v. Kutz, 1943, 78 U.S.App.D.C. 241, 139 F.2d 380 the Court concludes that the presumption of law that exists that a deceased left heirs has been rebutted by the summary and detailed findings of the Master and that a full and fair hearing has been had, and on the evidence adduced it has been decided as decisively as anything of a similar character can be decided in the circumstances that the intestate died without relatives entitled to take under the statute of decedents.

■ I find further, on the evidence presented to the Master and on the motions and affidavits, that under the provisions of Section 18–717 of the D.C. Code dealing with escheat, it appears as a fact that there is no widow or relation of the intestate within the fifth degree as that is reckoned under the terms of the statute and that, therefore, as a consequence, there is an escheat but not for the benefit of the District of Columbia but for that of the United States of America under the terms of Title 38, § 450(3) of the U.S.Code Annotated, which as far as pertinent reads:

"* * * *Provided further,* That *any funds* in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from compensation, automatic or term insurance, emergency officers' retirement pay, or pension, payable under said Acts, *which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States* and *shall be returned* by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased bene-

ficiary, less legal expenses of any administration necessary to determine that an escheat is in order, *to the Veterans' Administration, and shall be deposited to the credit of the current appropriations provided for payment of compensation, insurance or pension.*" [Emphasis supplied.]

The District of Columbia contends that Congress did not mean to include the District of Columbia within the meaning of the word "State" as used in the above quoted section. The reasoning advanced is deductive, viz.: that it purposely excluded the District, since any monies escheating to the District would be deposited in the Treasury of the United States.

This, however, is clearly contrary to expressed intent of Congress. For if the funds were to escheat to the District, they would go into the Treasury of the United States earmarked District funds. From the language of the above quoted section it appears conclusive that such funds are meant to be returned to the Treasury and used only by the Veterans' Administration for the payment of compensation, insurance, or pensions. The intent of Congress as to the disposition of such can only be carried out by including the District of Columbia within the meaning of the word "State" and by holding that they shall escheat to the United States.

Such a construction of the word "State" is also indicated by a reference to the similar escheat provision contained in Section 451 of Title 38. Here the phrase "laws of the State of residence" and "laws of the place of his residence" are used interchangeably. The latter phrase, it seems to me, clearly includes the District of Columbia, indicating that Congress by the use of the word "State" in the section above quoted meant to include the District.

Having found, therefore, that the decedent died without leaving heirs at law or next of kin within the fifth degree, the Court concludes as a matter of law that the funds of this estate shall escheat to the United States.

Order accordingly.