**DISTRICT OF COLUMBIA, Appellant,**

v.

**David R. WOLVERTON, Administrator of the Estate of Albert J. Smith, deceased, et al., Appellees.**

**No. 16295.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 9, 1961.

Decided Dec. 7, 1961.

Mr. H. Thomas Sisk, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellant.

Mr. Jerome I. Levinson, Atty., Dept. of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. William H. Orrick, Jr., Asst. Atty. Gen., and Messrs. David C. Acheson, U. S. Atty., Alan S. Rosenthal, Atty., Dept. of Justice, and David R. Wolverton, Bethesda, Md., were on the brief, for appellee United States.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This case involves competing claims of the United States and the District of Columbia to escheat of the moneys owned by an inmate of the United States

Soldiers' Home who died in 1959, intestate and without legal heirs or next of kin. The Soldiers' Home is located in the District of Columbia, and all parties agree that the inmate here involved—Albert J. Smith—was a resident of the District at his death. He had served for thirty-one years in the Regular Army, was retired in 1928, and entered the Home in 1956. The District Court, sitting as a Probate Court, awarded the moneys to the United States.

The District of Columbia has appealed, contending that under Section 18–717 of the D.C.Code,[1] the estate of the decedent escheated to it for the benefit of the poor. The United States, on the other hand, asserts that the moneys were properly awarded to it under Section 44 of Title 24 of the United States Code Annotated, which sets apart the unclaimed moneys in the estates of "deceased soldiers" for the support of the Soldiers' Home.[2] Since both statutes were enacted by Congress, in the exercise of unquestioned authority, we have no Tenth Amendment question such as was involved in United States v. Oregon, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), a case somewhat similar on its facts. The issue is solely one of statutory construction, involving the reconciliation of two expressions, on the subject of unclaimed estates, by the same legislative body. Different problems might well be presented if the inmate here involved had been a resident of a state at the time of his death, rather than a resident of the District of Columbia. Nor are we concerned with the estates of deceased soldiers not inmates of the Home at the time of death.

The central question before us is whether the provision in 24 U.S.C.A. § 44 for the appropriation of all moneys belonging to the estates of "deceased soldiers" was intended by Congress to include the moneys of an inmate of the Soldiers' Home, retired from the Army, who dies intestate and without heirs. After careful consideration we have concluded that Congress did so intend, and that the claim of the United States must prevail over that of the District of Columbia.[3]

Section 44 of Title 24 of the Code was derived from, and is substantially similar to, Section 7 of the Act of March 3, 1851, 9 Stat. 596, which established the Soldiers' Home. That section was intended to provide a means of support for the Home.[4] It is clear from reading the 1851 Act in its entirety that inmates of the Home are regarded as "soldiers" for the purposes of the Act—whether they be retired, pensioned, discharged, or invalided.[5] Section 1 of the Act, for ex-

1. Section 18–717 reads as follows:
   "If there be no widow or widower or relations of the intestate within the fifth degree, which shall be reckoned by counting down from the common ancestor to the more remote, the surplus of real and personal property shall escheat to the District of Columbia to be used by the Commissioners of the District of Columbia for the benefit of the poor." (Supp. VIII, 1960).

2. 24 U.S.C.A. § 44 is as follows:
   "For the support of the Soldiers' Home the following funds are set apart and appropriated: All stoppages or fines adjudged against soldiers by sentence of courts-martial, over and above any amount that may be due for the reimbursement of Government, or of individuals; all forfeitures on account of desertion; and *all moneys belonging to the estates of deceased soldiers, which may be unclaimed for the period of*

*three years* subsequent to the death of such soldiers, to be repaid by the commissioners of the institution, upon the demand of the heirs or legal representatives of the deceased." (Emphasis added.)

3. In matters of the present sort, a congressional statute of national application prevails over a statute applying only to the District of Columbia. See In re Germanovich's Estate, 122 F.Supp. 169 (D.D.C.1954).

4. Apparently it was hoped that there would be no need to request any additional appropriations. See H.R.Rep. No. 74, 26th Cong., 2d Sess. 4. Soldiers on active duty are required to contribute part of their pay to the support of the Home. 24 U.S.C.A. § 44a.

5. See also H.R.Rep. No. 74, 26th Cong., 2d Sess.; S.Rep. No. 227, 31st Cong., 2d Sess.; H.R.Rep. No. 109, 28th Cong.,

ample, provides that "all soldiers of the army of the United States, and all soldiers who have been, or may hereafter be, of the army of the United States, * * * shall, under the restrictions and provisions which follow, be members of the said asylum * * *." Section 4 of the 1851 Act, now 24 U.S.C.A. § 49, specifies the classes of "soldiers" eligible to become members of the Soldiers' Home, entitled to the rights and benefits conferred upon such members.[6] As a result, an inmate of the Soldiers' Home is certainly to be regarded as a "soldier" for the purposes of the Act,[7] even though he has been retired from active duty at the time he enters the Home, and remains retired during the time he receives the benefits of living there. And no provision of the statute suggests that a member of the Home, regarded as a soldier during his life, is not a "deceased soldier" when he dies. It is only reasonable that Congress would require that the unclaimed moneys of an inmate of the Home be used for the support of the Home, the benefits of which he has enjoyed before his death. Congress would hardly have so confined the scope of Section 44 as to reach only unclaimed moneys of deceased soldiers in active service with the Army at the time of death—persons who had never enjoyed the advantages of the Home and who might never have become eligible to do so. We are convinced, for reasons akin to those expressed by the Supreme Court in United States v. Oregon, 366 U.S. 643 at 647, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), that it was Congress' plan that the Soldiers' Home be supported—in part at least—by the unclaimed money estates both of soldiers in active service and of soldiers formerly in active service who at the time of death were receiving the benefits of the Home.

We are reinforced in this conclusion by the fact that Congress appears to have approved—by not amending the statute—what has concededly been the consistent administrative practice over the years of treating the moneys of deceased inmates of the Soldiers' Home as those of deceased soldiers which escheat to the United States for support of the Home.[8] See 4 Comp.Gen. 138–39 (1924).

We note that Section 44 in terms operates to appropriate for the support of the Soldiers' Home only moneys[9] unclaimed for a period of three years following the death of a "soldier" and which are to be repaid upon the demand of the "heirs or legal representatives" of the deceased. Both the District and the United States entered claims in the Probate Court for the moneys well within

---

2d Sess. 1; S.Rep. No. 531, 47th Cong., 1st Sess.; H.R.Rep. No. 1984, 47th Cong., 2d Sess.

6. 24 U.S.C.A. § 49 reads as follows:
   "The following persons shall be members of the Soldiers' Home, and entitled to the rights and benefits conferred, in this chapter and no others:
   "First. Every soldier of the Army of the United States who has served, or may serve, honestly and faithfully twenty years in the same.
   "Second. Every soldier and every discharged soldier, whether regular or volunteer, who has suffered, or may suffer, by reason of disease or wounds incurred in the service and in the line of his duty, rendering him incapable of further military service, if such disability was not occasioned by his own misconduct.
   "Third. The invalid and disabled soldiers, whether regulars or volunteers, of all wars."

7. We need not say whether an inmate is to be regarded as a soldier for any other purpose.

8. The District of Columbia appears to have challenged this practice only in one previous case. But "Upon further consideration of the statutes involved and the authorities," it withdrew its claim for escheat of the moneys of the deceased inmate of the Home. Letter of Corporation Counsel of the District dated March 22, 1937, on file in Estate of Jacob Mayer, Administration No. 46,-052, U. S. District Court, District of Columbia.

9. No contention is made by the District that any part of the amounts here involved was not "moneys" within the meaning of the statute.

the three-year period. The District in effect urges that it must be considered an heir or legal representative of the deceased, entitled to take under this section in preference to the United States. Although we said in another connection in Frazier v. Kutz, 78 U.S.App.D.C. 241, 243, 139 F.2d 380, 382 (1943), that the "escheat section, obviously, is as much a part of the statutory scheme of distribution as the other parts in relation to heirs at law or next of kin," we think Congress here used "heirs or legal representatives" in the ordinary sense, which would exclude a governmental authority claiming by escheat. Furthermore, if Section 44 is to grant any right to the United States with respect to estates of residents of the Home, the term "heirs or legal representatives" of the deceased soldier cannot include the District claiming by escheat. To conclude otherwise would in every instance automatically deprive the United States of any right to the unclaimed moneys of every deceased inmate of the Home under Section 44, since the District (or, it may be, the home state of the decedent) would always have a prior right by escheat.[10] If Congress had intended this, it could easily have used plain words indicating that the District or the home state was to take in preference to the United States. Since it did not do so, we will not emasculate the statute by a strained construction out of accord with ordinary understanding.

Affirmed.

10. We use the term "home state" to refer to a state which claims that an inmate was legally resident there at the time of his death. We do not pass, of course, on the question of the possible claims of an inmate's home state as compared with those of the United States.