**In re ESTATE OF Ralph H. COUSE, Brian Paul Jenny, Appellant.**

**No. 98–PR–497.**

District of Columbia Court of Appeals.

Argued April 16, 2003.
Decided May 20, 2004.

Brian Paul Jenny pro se.

Mary T. Connelly, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel at the time, and Charles

L. Reischel, Deputy Corporation Counsel at the time, were on the brief, New York, New York, for the District of Columbia.

Peter D. Keisler, Assistant Attorney General, Roscoe C. Howard, Jr., United States Attorney, R. Craig Lawrence, Assistant United States Attorney, and Mark B. Stern and Sushma Soni, Attorneys, Civil Division, Department of Justice, filed a brief for amicus curiae, the United States.

Before FARRELL and REID, Associate Judges, and NEBEKER, Senior Judge.

PER CURIAM.

This appeal, brought by the attorney appointed personal representative of the Estate of Ralph H. Couse (the Estate), challenges an order of the Superior Court requiring appellant to file an updated third and final accounting of his handling of the Estate before its closure. In essence the appeal presents a single over-arching issue: Does the Armed Forces Retirement Home Act of 1991, 24 U.S.C. § 420, preempt or prevail over the application of District of Columbia probate law to the estate of a deceased resident of the Retirement Home who dies intestate, once the Home has filed a standard petition for probate in the Superior Court?[1] Besides the able briefing by the parties, we requested the United States to file a brief as amicus curiae addressing that issue. We answer the presented question "no," and affirm the order of the Superior Court.[2]

## I. Statutory Background

Congress first established a home for ill or disabled soldiers in 1851. Act of March 3, 1851, ch. 25, 9 Stat. 595 ("An Act to found a Military Asylum for the Relief and Support of invalid and disabled Soldiers of the Army of the United States."). Congress funded the asylum through appropriations and other means, including "all moneys belonging to the estates of deceased soldiers, which are now, or may hereafter be unclaimed for the period of three years, subsequent to the death of said soldier or soldiers, to be repaid by the commissioners of the institution, upon the demand of the heirs or legal representatives of the deceased." Id. § 7, 9 Stat. at 596. Over time, this asylum became two

1. Although the issue has been briefed to us as one of federal pre-emption, strictly speaking the question is whether, "[i]n matters of the present sort, a congressional statute of national application prevails over a statute applying only to the District of Columbia." District of Columbia v. Wolverton, 112 U.S.App. D.C. 23, 24 n. 3, 298 F.2d 684, 685 n. 4 (1961).

2. The District of Columbia argues that we lack jurisdiction of this appeal because the Superior Court's directive to appellant was not a final order. See D.C.Code § 11-721(a)(1) (2001). Were appellant to comply with the trial court's order, though, the issue of the court's authority to order him to provide the final accounting could well be moot. Thus the District's jurisdictional argument appears to be that Jenny was obliged to defy the court's order and be held in contempt to bring the issue of the probate court's authority over the Couse Estate before us. But, as will be seen, appellant effectively stands in the shoes of the Retirement Home in his role as its designated attorney (as well as personal representative of the Estate), and it would be inappropriate, in our view, to require the Home to be held in contempt in order to present for review this significant issue of the relationship between federal law and probate jurisdiction.

The irony is not lost on us, of course, that the Home—through the United States as amicus curiae—rejects on appeal appellant's pre-emption argument as applied to this case. We pretermit the issue, raised by the United States in its brief, of whether appellant had authority to bring this appeal without prior approval of the Solicitor General. Also, we deny appellant's belated motion, made after briefing and oral argument, to withdraw the instant appeal, given the likelihood that appellant will again raise the issue in other appeals pending before the court.

separate retirement homes, one in Washington, D.C. for members of the Army and Air Force and one in Gulfport, Mississippi for Naval servicemembers.

In the Armed Forces Retirement Home Act of 1991, Congress redesignated the United States Soldiers' and Airmen's Home in Washington, D.C., and the Naval Home in Gulfport, Mississippi, as separate establishments of the Armed Forces Retirement Home. 24 U.S.C. § 411(c)(2). The Retirement Home is an independent establishment in the executive branch whose purpose "is to provide ... residences and related services for certain retired and former members of the Armed Forces." *Id.* § 411(a), (b). Each of the two Homes has a Director. *Id.* § 411(d)(2).

The Director is required by statute to take certain steps when a Home resident dies. *See* 24 U.S.C. § 420 ("Disposition of effects of deceased persons; unclaimed property"). If the resident leaves a will, the Director "shall ensure" that the will "shall be promptly delivered, upon the death of the resident, to the proper court of record." *Id.* § 420(a)(1). If the resident dies intestate and the heirs or legal representatives cannot immediately be ascertained, the Director "shall retain all property left by the decedent for a three-year-period beginning the date of the death," with the Director to distribute the property in the order set by the statute when beneficiaries have been identified. *Id.* § 420(a)(2).

The Act establishes deadlines and priorities for distributing assets of a deceased resident's estate. Whenever a resident dies and heirs and their legal representatives or nominated fiduciaries cannot be ascertained—regardless of whether the resident leaves a will—the resident's entire estate "shall escheat to the Retirement Home" after a three-year claims period, *id.*

§ 420(b)(1)(A), with the proceeds of the sale of such unclaimed estate property to be deposited in the Armed Forces Retirement Home Trust Fund. *Id.* § 420(b)(1)(B). If a personal representative is appointed to administer the estate and completes administration before the end of the three-year period, the net proceeds of the estate "shall be deposited directly in the Armed Forces Retirement Home Trust Fund." Heirs may file claims for the proceeds with the Secretary of Defense within six years after the resident's death, with review exclusively in the United States Court of Federal Claims. *Id.* § 420(b)(1)(C), (d).

The Act also provides that the Director "may designate" an attorney "to serve as attorney or agent for the facility in any probate proceeding in which the Retirement Home may have a legal interest." *Id.* § 420(b)(2)(A). That designated attorney must be a "full-time officer or employee of the United States or a member of the Armed Forces on active duty." *Id.* The Home's designated attorney may petition for appointment as fiduciary of the deceased's estate, in which case the Act gives the designated attorney priority over all petitioners other than the deceased's nominated fiduciary or heirs. *Id.* § 420(b)(2)(B). Furthermore, "[i]n a probate proceeding in which the heirs of an intestate deceased resident cannot be located and in a probate proceeding in which the nominated fiduciary, legatees, or heirs of a testate deceased resident cannot be located," the Home's designated agent or attorney "shall be appointed as the fiduciary of the deceased resident's estate." *Id.*

## II. The Present Case

Ralph H. Couse, a veteran and resident of the Retirement Home in Washington, D.C., died intestate on October 5, 1990. One month later, appellant (hereafter Jen-

ny) filed a petition for standard probate of Couse's estate. Jenny, the D.C. Home's designated attorney, asked to be appointed personal representative of the estate. The probate court granted the petition and appointed Jenny personal representative.[3] Consistent with the Probate Code and Rules, Jenny filed a first, second, and third inventory and account (and revised versions of those filings) documenting the assets of the Couse estate and the expenses of administration. At each point, Jenny was delinquent in filing required accounts and documentation. While the third account was pending with the court, Jenny filed a "Waiver of Filing Inventories And Accounts," along with a cover letter dated July 7, 1995, asserting that administration of the estate was "controlled by" 24 U.S.C. § 420, which "supersedes" D.C. probate law. Jenny stated that because the Director of the D.C. Home had concluded that the Couse estate had already escheated to the Home under federal law, Jenny was therefore enclosing the waiver of further accounts in order to "close the estate pursuant to 24 U.S.C. [§ ] 420."

In an order filed July 18, 1997, the Superior Court (Long, J.) denied a waiver to wind up the estate. The court noted that it had rejected identical arguments by the same attorney in the consolidated probate cases of *In re Estates of Mario Ficara, Lawrence Costello, & Joseph Del Grosso*, Admin. Nos. 924–88, 2356–94, and 353–94 (D.C. Superior Ct. June 30, 1997), in which the court held that 24 U.S.C. § 420, on its face, did not supplant D.C. probate procedures, but merely directed where the money would go if escheat occurred; and that the filing of final ac-

counts and inventories was necessary to show the manner in which Jenny administered the estate and incurred expenses, as well as the assets to be escheated. Based on the analysis and reasoning in *Ficara*, Judge Long concluded that "abbreviated Probate is not appropriate. The mere presentation of a Waiver of Accounts is not sufficient to close this estate. A full accounting must be made prior to closure of this estate and escheat."

The court directed Jenny (1) to file a restated third and final account to update the information in the previous account (to include, among other things, Jenny's reasonable attorney fees) and allow the estate to be closed;[4] and (2) to present the court with a proposed order authorizing disbursement of the balance of the estate through escheat to the Home, pursuant to 24 U.S.C. § 420. Jenny filed a *motion for reconsideration*, which the court denied as meritless.

### III.

■ Jenny renews on appeal his contention that because the funds in the Couse estate are not probate assets, but rather monies designated by Congress for the use and funding of the Home, federal law deprives the Superior Court of jurisdiction over the administration of such estates. We hold, in keeping with the positions of both the United States and the District of Columbia in this case, that in the absence of an actual conflict with 24 U.S.C. § 420, the Home must comply with local probate procedures after it voluntarily places a deceased resident's estate in probate. More specifically, 24 U.S.C. § 420 does not

---

**3.** Because the proceedings in this case predated enactment of 24 U.S.C. § 420(b)(2)(B), appellant sought appointment both under D.C.Code § 20–303(a)(1)(J) (2001), which provides for appointment of the decedent's largest creditor, *i.e.*, the Home, and under a

federal escheat statute that predated 24 U.S.C. § 420.

**4.** Under D.C.Code § 20–1301(a) (2001), the approval of the final account automatically closes the estate.

pre-empt or override the system of periodic accounting at issue in the case.

■ Under the Supremacy Clause, the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. "Thus, since ... *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 ... (1819), it has been settled that state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), quoting *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Pre-emption analysis "'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (citation omitted); *see also Geier v. American Honda Motor Co.,* 529 U.S. 861, 894, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). In addition, the Supreme Court's pre-emption analysis "is guided by [the] oft-repeated comment ... that '[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case," such that "any understanding of the scope of a pre-emption statute must rest primarily on 'a fair understanding of congressional purpose,'" as discerned from the statutory language, the statutory framework, and the structure and purpose of the statute as a whole. *Medtronic,* 518 U.S. at 485–86, 116 S.Ct. 2240 (citations and emphasis omitted).

■ Courts have identified three ways in which a federal statute can pre-empt state law: by express pre-emption,

where statutory language "reveals an explicit congressional intent to pre-empt state law," *Barnett Bank of Marion County v. Nelson,* 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996); by field pre-emption, in which "federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it,'" *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608 (citation and quotation marks omitted); and by implied or conflict pre-emption, which applies "'where compliance with both federal and state regulations is a physical impossibility, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objections of Congress.'" *Boggs v. Boggs,* 520 U.S. 833, 844, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (citations omitted); *see also Merrell Dow Pharms., Inc. v. Oxendine,* 649 A.2d 825, 828 (D.C. 1994).

The Armed Forces Retirement Home Act does not contain an explicit pre-emption provision. However, there is no dispute that, as a general matter, the statute preempts contrary local law when a direct conflict exists. *See generally Cox v. Shalala,* 112 F.3d 151, 154 (4th Cir.1997) ("[E]ven though the [North Carolina] Wrongful Death Act is a probate statute, and thus of particular state concern, when a state probate statute 'sharply' interferes with, or is directly contrary to a federal law, the state statute must yield."). Such is the case with regard to certain parts of the Retirement Home Act that establish deadlines and priorities for the distribution of estate assets. Section 420 necessarily prevails over substantive District of Columbia probate law to the extent that law would establish different deadlines or priorities.[5]

---

5. Thus, the Retirement Home escheat provision, § 420(b)(1)(A), pre-empts application of

D.C.Code § 19–701 (2001), which provides that "[w]here there is no surviving spouse or

Section 420 does not, however, pre-empt the procedures established by the D.C. Probate Court when those procedures do not defeat the substantive rules or purposes of the federal law. Section 420 clearly contemplates that the Home's agent will participate in probate proceedings by lodging a will with the probate court when a resident dies testate, § 420(a)(1), or by petitioning for appointment as fiduciary of the resident's estate in any proceeding in which the Retirement Home has a legal interest. Section 420(b)(2)(A)-(B). In other words, Congress anticipated the use of state probate procedures, not their displacement. If those procedures impair operation of federal law, they may be displaced. Thus, if the Register of Wills were to require that where administration is completed within three years, the Home must turn estate assets over to the registry of the court until the end of the three-year claims period, that result would directly conflict with the result contemplated by § 420(b)(1)(C). But that particular conflict is not presented here, where the three-year claims period has run but administration of the Couse Estate has not yet been completed. And there is nothing in the system of periodic accounting at issue here that defeats any

federal right or policy. *Wolverton, supra* note 1, on which Jenny particularly relies, does not address this issue, and neither the 1993 amendments to § 420 nor *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (also relied on by Jenny), demonstrate Congress's intent to pre-empt D.C. probate procedures in toto.[6]

■ We add that, although § 420(a)(1) requires a Director to deliver a deceased resident's will "to the proper court of record," nothing compels the Director to admit to probate the estate of a deceased resident who, like Couse, dies intestate. *United States v. Riggs Nat'l Bank,* 109 F.Supp.2d 1, 5 (D.D.C.2000) ("A state court cannot make the United States initiate a probate proceeding."). As the trial court correctly pointed out in *In re Estates of Mario Ficara, Lawrence Costello, & Joseph Del Grosso,* Admin. Nos. 924–88, 2356–94, and 353–94 at 12 (D.C. Superior Ct. June 30, 1997), "[W]here no one else comes forward to obtain letters of administration, the Home can merely wait out the three-year claim period and take control of the decedent's personalty, without any permission of the Superior Court. This, indeed, is exactly the self-executing nature of the federal law." *See generally Riggs*

relations of the intestate within the fifth degree, ... the *surplus of real and personal property* escheats to the District of Columbia to be used by the Mayor of the District of Columbia for the benefit of the poor." The D.C. Circuit established the supremacy of the federal escheat provision in *District of Columbia v. Wolverton, supra* note 1, 112 U.S.App. D.C. at 26, 298 F.2d at 687 (upholding validity of 24 U.S.C. § 44, a prior codification of the Retirement Home escheat provision,· against the competing claims of the District government). *That provision is not at issue* here, because all agree that the balance of the estate must be disbursed through escheat to the Home.

**6.** The 1993 amendments provide that (1) the Director may designate an agent to represent

the facility in a probate proceeding, § 420(b)(2)(A); and (2) if a personal representative or fiduciary is appointed to administer the resident's estate, and if he completes the administration before the end of the three-year claims period, then the balance of net proceeds "shall be deposited directly in the Armed Forces Retirement Home Trust Fund," § 420(b)(1)(C). However, the 1993 amendments do not address the procedures to be followed during administration of the estate. In *Felder,* 487 U.S. at 143, 108 S.Ct. 2302 the Supreme Court held that the notice-of-claims deadline established by state law was preempted because it was "patently incompatible with the compensatory goals" of § 1983. Appellant identifies no similar incompatibility here.

*Nat'l Bank*, 109 F.Supp.2d at 5–10 (relying on the "sound" reasoning in *Ficara* to conclude that a similar federal escheat provision for veterans is likewise self-executing, and does not require the Department of Veterans Affairs to open a probate proceeding in order to be entitled to the veteran's funds).[7] Here, by contrast, the Home elected to initiate a probate proceeding.

The consequence is that Jenny, as designated agent for the Home, was required to comply with the probate procedures of Superior Court once the Home had voluntarily placed the deceased resident's estate in probate. As Jenny has not given us any other reason why his compliance with those procedures was not required, the order of the Superior Court directing him to file a restated third and final account is

*Affirmed.*

---

**7.** Of course, the self-executing nature of this federal law might not be so obvious to a bank officer or other entity holding a decedent's personalty, where usually a probate court order must precede the release of such property. Hence, Jenny's resort to the Probate Division of the Superior Court was probably the best course to secure such release short of an action in the federal court to enforce 24 U.S.C. § 420.